■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v

STEVEN SMEDMAN and DAVID MULHOLLAND, Respondents.— Appeal by the People from an order of the County Court, Orange County (King, J.), dated April 19, 1988, which granted those branches of the omnibus motions of the defendants Steven Smedman and David Mulholland which were to suppress identification testimony and statements made by them to law enforcement officials and which dismissed Orange County Indictment Number 87-00089 as to them.

Ordered that the order is reversed, on the law and the facts, Orange County Indictment Number 87-00089 is reinstated against the defendants Steven Smedman and David Mulholland, those branches of the omnibus motion of those defendants which were to suppress identification testimony and statements made by them to law enforcement officials are denied, and the matter is remitted to the County Court, Orange County, for further proceedings.

The defendants Steven Smedman and David Mulholland, together with a codefendant Oscar Conley, were indicted in May 1987 for assault in the second degree of a soldier which occurred in the early morning hours of September 21, 1986. The codefendant Conley pleaded guilty to assault in the third degree in satisfaction of the indictment during the pendency of the appeal. At issue here is the admissibility of statements made by Smedman to the police on September 21, 1986, and September 22, 1986, respectively, and by Mulholland to the police on September 21, 1986, and February 2, 1987, respectively. Also at issue are the admissibility of identification testimony of a witness who viewed two photographic arrays in April 1987 and the propriety of the dismissal of the indictment against Smedman and Mulholland by the County Court based upon its suppression ruling. We conclude that the County Court's rulings were made in error.

The evidence adduced at the suppression hearings reveals that Smedman appeared at the Highland Falls police station at the request of a police officer at approximately 9:30 A.M. on September 21, 1986, approximately eight hours after the incident then under investigation. Smedman was advised of his *Miranda* rights, waived them, and denied that he was at the scene of the crime or knew about the fight. He was questioned by another officer at about noon, when he continued to deny knowledge of the incident but admitted he was at the scene. Smedman left the police station after making the second statement. He was never handcuffed or otherwise restrained, no weapons were ever displayed, and he was at the station house for a total of about six hours. However, Smed-

man and his girlfriend, who had been at the scene of the incident and who was also questioned by police at the station house on September 21, 1986, appeared at the police station at 7:30 A.M. on the following day, whereupon Smedman asked to speak with the officer he had met with at noon the day before in order to clarify his earlier statement. After speaking with the officer, Smedman and his girlfriend left the station house.

Mulholland first arrived unescorted by the police at the station house around 12 noon on September 21, 1986, after he learned from the defendant Smedman's brother that the police wanted to question him. He was interviewed by an investigator with the District Attorney's office in the presence of a police officer dressed in civilian clothes. The investigator and Mulholland sat at a desk, Mulholland was not handcuffed, no weapons were displayed, and he was not advised of his rights. Following the interview, the investigator, in Mulholland's presence, typed a statement which Mulholland reviewed and signed at about 3:00 P.M. In his statement, Mulholland acknowledged he pushed the soldier, but asserted it was the codefendant Conley who delivered a single cracking blow to the soldier's head. Mulholland left the station house shortly after signing the statement.

On February 2, 1987, the investigator telephoned Mulholland and asked him to come to the station house for further questioning. Mulholland did so and again met with the investigator, who testified at the suppression hearing that he advised Mulholland of his *Miranda* rights, and that Mulholland waived those rights. Mulholland, who was wearing a cast on his arm, reviewed his earlier statement, added some details, made mention of an attorney handling an unrelated civil matter, and reported that Smedman had admitted hitting the soldier in the jaw. As with his first interview with the investigator, Mulholland was unrestrained, and left the station house at the conclusion of the interview, which lasted approximately one hour and a half to two hours.

In April 1987 a witness, who had at the outset of the investigation informed police that he saw at least part of the incident from across the street, viewed two photographic arrays. In preparing the arrays, the District Attorney's investigator searched through 250 photographs to find ones depicting persons of ages, facial characteristics, and hairstyles similar to those of Smedman and of Mulholland. Moreover, the investigator testified, and the photographic arrays as reproduced in the record demonstrate that, to eliminate height lines in the photographs of some of the fillers, he put paper

frames around the photographs. Furthermore, there is no evidentiary indication that the police made any suggestive comments to the witness, who picked Smedman's photograph from among six in one array and Mulholland's photograph from another group of six.

Following the lengthy suppression hearings, the County Court apparently found that Smedman and Mulholland had each been in custody each time he made a statement to law enforcement officials. It upheld use at trial of Smedman's first statement, but suppressed the second and third statements on the ground that the second statement was not preceded by a rereading of the *Miranda* warnings *(but see, People v Allen,* 138 AD2d 612), and that the third statement was a tainted product of the second *(but see, People v Alaire,* 148 AD2d 731, 737-738). It suppressed both of Mulholland's statements, ruling that because he was a "target of the investigation", the questioning which occurred on September 21, 1986, should have been preceded by *Miranda* warnings. Moreover, and notwithstanding the investigator's testimony that the interview on February 2, 1987, commenced with the reading of *Miranda* warnings, and that Mulholland did not deny that warnings were administered, the County Court found that the People had not sustained their burden of showing that Mulholland "was given his rights" on that date. It again reasoned that since he was a "focus" of the investigation, the failure to give warnings rendered the statement inadmissible. It also noted that because Mulholland claimed to have an attorney in a civil matter, all questioning of him should have ceased.

Turning to the issue of identification testimony, the County Court found the photographic arrays to be unduly suggestive. The only ground specified in its written decision for that conclusion was its finding that only Mulholland's photograph did not have height lines. It next ruled that the identification witness was both incredible and had no independent source for his identification and thus suppressed his in-court identification testimony. With respect to Smedman, the County Court simply suppressed the in-court identification "for the reasons already given". Finally, the County Court *sua sponte* dismissed the indictment against both Smedman and Mulholland on the articulated ground that even if the statements and identification testimony were not suppressed, the only evidence against these defendants came from a witness who was unworthy of belief and that the case would not in any event withstand a motion to dismiss at trial.

We note that the County Court was without authority to

*sua sponte* dismiss the indictment during the course of preliminary proceedings on the ground that the trial evidence would be insufficient *(see, People v McIntosh,* 167 AD2d 429; *see also, People v Sullivan,* 142 AD2d 695). CPL article 210 governing pretrial proceedings sets forth the permissible bases for a dismissal on motion before trial, and the insufficiency of the trial evidence is not among them *(see,* CPL 210.20). Moreover, whether the People can or should proceed on the evidence remaining after the suppression of evidence is a determination reserved to the People *(see, People v Kates,* 53 NY2d 591, 596-597; *cf.,* CPL 450.50). We accordingly reinstate the indictment as against Smedman and Mulholland.

The County Court apparently found that the statements made by Smedman and Mulholland were the product of custodial interrogations. It is well settled that the test to determine whether a person is in custody so as to trigger the requirement that *Miranda* warnings be given is whether a reasonable person, innocent of any crime, would have thought he or she was in custody *(see, People v Yukl,* 25 NY2d 585, *cert denied* 400 US 851; *see also, People v Bailey,* 140 AD2d 356; *People v Oates,* 104 AD2d 907). That the questioning takes place in a police station, or that a person is read his or her rights, does not automatically transform investigatory questioning into a custodial interrogation, even if that person is a "suspect" *(see, People v Brown,* 178 AD2d 484). In the instances before us, Smedman and Mulholland voluntarily appeared at the station house, were able to and did leave the station house at the conclusion of the questioning, and in the interim were not restricted in their movements or subjected to displays of official force or power *(cf., People v Bailey, supra).* Moreover, since they had been present at the scene of the incident under investigation, it is reasonable that the police would want to question them to determine whether in fact a crime had occurred. Indeed, the police also questioned Smedman's girlfriend, who was not charged with any crime. The circumstances as a whole demonstrate that a reasonable person, innocent of any crime, in the place of Smedman and Mulholland, would not have thought himself or herself to be in custody. Thus, the failure or failures to give *Miranda* warnings before obtaining some or all of the statements presently at issue is not fatal to their use at trial *(see, Miranda v Arizona,* 384 US 436).

Nor can we agree with the County Court that Mulholland's right to counsel was violated during the course of the interview on February 2, 1987. There is nothing to suggest that

that defendant invoked his right to counsel *(see, People v Cunningham,* 49 NY2d 203). The police were informed that Mulholland was represented by counsel in a civil matter, but it had no bearing as to how police could lawfully proceed in this case *(cf., People v Bing,* 76 NY2d 331).

Further, the County Court's finding that the photographic arrays were unduly suggestive is without basis. The record demonstrates that they were prepared with some care. Our review of the photographic arrays reveals that none of the photographs in the array pertaining to Mulholland had visible height lines, and that, while some height lines appear in the array pertaining to Smedman, his photograph is not the only one without them. Our review of the arrays also reveals that no photograph stands out more than any other and that the individuals depicted look sufficiently similar so that the witness's attention was not drawn to only one photograph *(see, People v Floyd,* 173 AD2d 211; *People v Dubois,* 140 AD2d 619). Since the eyewitness's identification of Smedman and Mulholland is not the product of any suggestive police conduct, the weight to be accorded his testimony based upon his opportunity to observe and his credibility should be deferred to the trial for determination. Bracken, J. P., Harwood, Rosenblatt and Eiber, JJ., concur.