89 N.Y.2d 351 (1996)
675 N.E.2d 1189
653 N.Y.S.2d 237
In the Matter of Jeanine Pirro, District Attorney of Westchester County, Appellant,
v.
Daniel A. Angiolillo, as County Court Judge, Westchester County, et al., Respondents.
Court of Appeals of the State of New York.
Argued October 17, 1996
Decided December 18, 1996.
Jeanine Pirro, District Attorney of Westchester County, White Plains (Richard Longworth Hecht and Richard E. Weill of counsel), appellant pro se.
Dennis C. Vacco, Attorney-General, New York City (Carolyn Cairns Olson, Thomas D. Hughes and Michael Belohlavek of counsel), for Daniel A. Angiolillo, respondent.
Marilyn J. Slaaten, County Attorney of Westchester County, White Plains (Annette G. Hasapidis-Marshall and Stacey Dolgin-Kmetz of counsel), for Rocco Pozzi, respondent.
Chief Judge KAYE and Judges SIMONS, SMITH, LEVINE and CIPARICK concur with Judge TITONE; Judge BELLACOSA dissents and votes to affirm in a separate opinion.
*353 TITONE, J.
Authorized by Penal Law § 60.01 (2) (d), a "split sentence" is one consisting of a term of imprisonment, intermittent or definite, combined with a term of probation or conditional discharge. The issue presented in this case is whether a definite sentence that was imposed in conjunction with a term of probation is a condition of or is subsumed within the probationary part of the sentence so that it can be modified, reduced or even eliminated pursuant to the discretionary authority conferred by CPL 410.20. Having reviewed the statutory language and relevant legislative history, we conclude that the imprisonment part of a split sentence is a penalty that exists separate and apart from the probationary term and that, accordingly, it may not be altered once its service has begun.
The criminal prosecution underlying this proceeding was initiated against respondent Bryan Cohen on April 29, 1994. Cohen was charged in a felony complaint with having stolen some $5,742 from one of his insurance clients. According to the People, Cohen's wife also had a role in the thefts although she was not formally charged. Cohen was also believed to have stolen over $57,000 from two other clients.
*354 After two days of plea negotiations, Cohen consented to waive indictment and to be prosecuted instead on a superior court information charging him with third degree grand larceny. In exchange for his plea of guilty to the reduced larceny charge, Cohen was promised a sentence consisting of four weekends of intermittent incarceration and five years' probation, provided that he met his obligation to make full restitution. If that obligation was not satisfied, it was understood that Cohen would be sentenced to a maximum of six months' incarceration and five years' probation. As an additional term of the plea agreement, the People promised not to prosecute Cohen's wife. Cohen failed to make the required restitution payments before the scheduled sentencing date. As a result, respondent County Court Judge sentenced him to a six-month term of "shock" incarceration to be served concurrently with a five-year probationary term.
Three weeks after Cohen began serving his sentence, he moved for a "modif[ication of] the terms and conditions of [his] probation." Citing personal difficulties, Cohen sought a reduction in the previously imposed term of incarceration to either time served or weekend incarceration. After Cohen's motion was made, the Westchester County Department of Probation separately petitioned the sentencing court to "modify" the conditions of Cohen's probationary term by substituting a period of home confinement with electronic monitoring for the previously imposed term of incarceration.
Having been served with notice of Cohen's motion, the People appeared to oppose the motion, arguing primarily that CPL 430.10 prohibited the court from changing a lawful sentence of imprisonment once service of the sentence has commenced. Respondent Judge rejected the People's arguments and, relying on CPL 410.20, ordered that Cohen be released from jail, substituting for the jail term a six-month period of home confinement with electronic monitoring.[1]
Following the issuance of this order, the Westchester County District Attorney took a direct appeal, purportedly under CPL 450.30 (3). She also brought the present collateral CPLR article 78 proceeding seeking a judicial directive prohibiting the *355 enforcement of the Judge's order.[2] In support of both her appeal and her petition, the District Attorney argued that the Judge had exceeded his authority by using CPL 410.20, the procedural mechanism for modifying conditions of probation, as a predicate for eliminating the incarceration portion of Cohen's sentence.
The Appellate Division rejected petitioner's argument, holding that prohibition was unavailable because the District Attorney had "failed to demonstrate a clear legal right to the relief sought" (222 AD2d 438). At the same time, the Court dismissed the People's direct appeal from the order issued in the criminal case on the ground that "the People do not possess the right to appeal from an order lawfully modifying a condition of probation pursuant to CPL 410.20" (People v Cohen, 222 AD2d 447, 448, citing CPL 450.20, 450.30 [2], [3]). In so ruling, the Court stated its view on the merits, opining that the incarceration portion of a "split sentence" is a "condition of" the term of probation and, as such, may subsequently be modified by the sentencing court (People v Cohen, supra, at 448). This Court subsequently granted the District Attorney leave to appeal from the dismissal of her article 78 petition.[3]
As a threshold matter, we hold that an article 78 proceeding seeking relief in the nature of a writ of prohibition was the appropriate procedural vehicle for the assertion of petitioner's claim. While a proceeding for prohibition relief is unavailable to review an error of law, "however egregious and however unreviewable" (Matter of State of New York v King, 36 N.Y.2d 59, 62), that remedy "is available * * * `to prevent a court from exceeding its authorized powers in a proceeding over which it has jurisdiction'" as well as to challenge the court's subject matter jurisdiction over the proceeding as a whole (Matter of Holtzman v Goldman, 71 N.Y.2d 564, 569, quoting La Rocca v Lane, 37 N.Y.2d 575, 578-579). Since petitioner's contention was that the Judge was without the power to alter Cohen's term of incarceration, her choice of a CPLR 7801 proceeding *356 to test the merits of her position was the correct one.[4] It remains for us to consider the separate question of whether under the circumstances the extraordinary writ of prohibition lies. In that regard, the question of whether petitioner has established a clear legal right to that relief is critical (see, e.g., Matter of Holtzman v Goldman, supra, at 569).
Resolution of this question requires an inquiry into the relationship between the term of incarceration and the probationary term that are imposed as part of a split sentence pursuant to Penal Law § 60.01 (2) (d). As a general principle, once its service has begun, a sentence of continuous incarceration cannot be interrupted or modified except as specifically authorized by law (CPL 430.10). In contrast, a sentence of probation or intermittent incarceration is revocable and may be modified at any time before its expiration (Penal Law § 60.01 [2]; § 85.05; see, CPL 410.70 [5]). Under CPL 410.20 (1), "[t]he court may modify or enlarge the conditions of a sentence of probation" without notice to the People, although the defendant must be notified and be personally present if the modification is adverse to him.
Respondents contend that the incarceration portion of a "split sentence" is really nothing more than a condition of probation and that, consequently, it may be reduced or even eliminated pursuant to this provision, without notice to the People, if the court deems such a modification appropriate. As authority for this position, respondents rely almost exclusively on a 1978 amendment to Penal Law § 60.01 (2) (d) (see, L 1978, ch 274).[5] That amendment added the following italicized language:
"In any case where the court imposes a sentence of *357 imprisonment * * * not in excess of six months for a felony * * * it may also impose a sentence of probation * * * provided that the term of probation * * * together with the term of imprisonment shall not exceed the term of probation * * * authorized by [Penal Law article 65]. The sentence of imprisonment shall be a condition of and run concurrently with the sentence of probation" (Penal Law § 60.01 [2] [d]).
Although a literal and out-of-context reading of the added sentence might support the view that the "sentence of imprisonment" is "a condition of" the "sentence of probation," a closer analysis of the amendment's history and of the statutory scheme as a whole makes clear that the incarceration portion of a split sentence was never intended to be subordinate to the probation portion, nor was it intended to be modifiable in the same way that the terms of the probationary sentence are. "The letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 111, at 226-227).
Initially, the language of the statute as a whole belies respondents' proposed interpretation. The first sentence of the statute states that the court "may also impose a sentence of probation" "[i]n any case where the court imposes a sentence of imprisonment" (emphasis supplied), thereby suggesting that in split sentencing decisions the term of incarceration was intended to be the fixed or core element and the probationary sentence was intended to be the flexible variable. Given this hierarchy, treating the sentence of imprisonment as a modifiable condition of probation "puts the `cart before the horse'" (see, Antinore v Genessee County Local Conditional Release Commn., 146 Misc 2d 520, 521).
Even more importantly, the legislative history of the 1978 amendment to Penal Law § 60.01 (2) (d) evinces no legislative intent to alter the existing sentencing hierarchy through the addition of the language on which respondents now rely. The imposition of a "split sentence" consisting of both incarceration and probation was first authorized in 1974 with the enactment of Penal Law § 60.01 (2) (d) (L 1974, ch 835). The purpose of the original provision was apparently to furnish a new and more flexible tool for penalizing persons "for whom extensive jail terms are deemed unnecessary" but who would benefit from a "short period of incarceration before being put on probation" *358 (see, Hechtman, 1974 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 39 [1967 ed], Penal Law § 60.01, 1974-1975 Pocket Part, at 85).
After several years of experience with the split sentence option, the Legislature found it necessary to revisit the area by enacting an amendment that would "permit * * * a person to be sentenced to probation and imprisonment concurrently" (Executive Mem in Support, Bill Jacket, L 1978, ch 274). The specific impetus behind the amendment was a problem that had apparently emerged as a result of the use of intermittent or weekend imprisonment in conjunction with a sentence of probation. According to the Memorandum in Support of the 1978 amendment, a recent "restrictive" court decision held that "the period of probation d[id] not begin until after the last weekend in jail,"[6] and, as a consequence of this decision, the weekend inmate was at liberty without any supervision at all during the week (see, id.). The 1978 amendment was deemed necessary to make clear that the courts had the authority "to sentence an individual to serve both jail and probation at the same time" (id.).
The meaning of the additional directive that "[t]he sentence of imprisonment shall be a condition of * * * probation" remains obscure. It seems likely that the intention was to make successful service a condition precedent for, rather than a condition of, the sentence of probation. In any event, it is evident that the 1978 amendment, with its narrow remedial goal, was never intended to effect the dramatic change in the relationship between the jail term and the probationary sentence that respondents' interpretation would accomplish. As one court observed, the statute "permits a sentence of probation to be added to a sentence of imprisonment * * *. The sentence of imprisonment stands on its own feet [and there is] nothing in the law that would permit this sentence to be revoked" (Antinore v Genessee County Local Conditional Release Commn., supra, at 521).
In view of this principle, it is apparent that the Judge exceeded his statutory powers when he vacated the unserved portion of respondent Cohen's jail sentence and substituted a term of home confinement with electronic monitoring. Inasmuch *359 as the jail sentence was separate from and independent of the probationary term, CPL 410.20 did not furnish authority to vacate the former and the Judge was bound by the no-modification rule of CPL 430.10.
Since petitioner has established both that the Judge exceeded his "authorized powers" and that she has a "clear legal right" (see, Matter of Holtzman v Goldman, 71 N.Y.2d 564, 569, supra), it remains for us to determine whether the discretionary factors that have previously been considered in prohibition proceedings are present in this case (see generally, id., at 569; Matter of Rush v Mordue, 68 N.Y.2d 348, 354). These factors include the gravity of the harm that would result from the act to be prohibited and whether that harm can be adequately corrected through an appeal or other proceedings at law or in equity (Matter of Rush v Mordue, supra, at 354).
Here, it is apparent that petitioner has no adequate remedy at law for her grievance (see, Matter of State of New York v King, supra, at 62; Matter of Dondi v Jones, 40 N.Y.2d 8, 14; cf., Matter of Holtzman v Goldman, supra, at 570). As the Appellate Division correctly determined, there is no statutory predicate for a direct appeal by the People from an order purportedly entered pursuant to CPL 410.20. CPL 450.30 (3), the provision petitioner cited as the predicate for the People's direct appeal in People v Cohen, is available only where the trial court has vacated a sentence for legal invalidity (see, CPL 450.30 [2], [3]). It has no application where, as here, a concededly legal sentence has been altered on purely discretionary grounds.
The other important consideration is the harm that would flow from the enforcement of the Judge's unauthorized order. In this case, the harm would be substantial and would, in fact, implicate the public interest. Although respondent Cohen, assisted by his wife, was allegedly guilty of stealing more than $63,000 from his insurance clients, the People relinquished their right to prosecute his wife and refrained from prosecuting Cohen himself for any crime more serious than third degree larceny with the specific expectation that Cohen would either make restitution or serve six months in jail. The People's agreement to that plea bargain represented a determination by the District Attorney that the ends of justice would be best served by trading the possibility of a harsher penalty for the certainty of a specific jail term (see, People v Farrar, 52 N.Y.2d 302, 307). The discretion to make that determination was conferred on the District Attorney by the Legislature as a matter of policy *360 and in recognition of "the prosecutor's independent role and interest" in the outcome of the prosecution (id., at 307; see, CPL 220.10 [3], [4]). If the enforcement of the Judge's unauthorized order is not prohibited, the People would lose the core benefit of their bargain and, even more seriously, their legislatively mandated role in the plea bargaining process would be circumvented. We note that the procedural posture in which the matter has arisen precludes the People from withdrawing their consent to the plea (cf., People v Farrar, supra, at 307-308).
These considerations provide persuasive justification for granting the "extraordinary remedy" of a writ of prohibition to prevent enforcement of the Judge's order substituting a period of home confinement with electronic monitoring for the original sentence of six months' jail time. By denying petitioner that relief on the grounds that the order was authorized and that, in any event, prohibition did not lie, the Court below committed reversible error.
Accordingly, the judgment of the Appellate Division should be reversed, without costs, the petition granted and respondent Angiolillo prohibited from enforcing the subject order of the County Court entered in People v Cohen.
BELLACOSA, J. (dissenting).
I conclude that an affirmance of the Appellate Division's judgment denying prohibition is in order and, thus, respectfully dissent.
At the threshold, the exceptional writ of prohibition should not be granted, even assuming the writ does lie, which I contend it does not. The People's "clear" entitlement to its issuance is at least arguable, because the case turns on a subtle statutory interpretation of continuing trial court authority. That analysis alone ought to be enough to sustain the prudential result of the intermediate appellate court, which ordinarily allows trial and sentencing courts a reasonable discretionary range to deal with this particular category of condition of probation as part of a sentence. To restrict that flexible authority, by approbation of the intercepting weapon of prohibition, dependent as it is on the highest notions of jurisdiction to act, is not warranted or necessary in this case. Entitlement to the extraordinary writ requires a petitioner to satisfy a dual high hurdle of showing lack of jurisdiction over an entire proceeding and a clear right to the writ itself. I respectfully submit that the prosecution has fulfilled neither prong of its burden in this case.
*361 The collateral and irregular procedural modality, granted in the first instance by this Court, interrupts and supersedes ordinary, direct-line process. Applied here, it seriously weakens the definitive rationale and guidance of Matter of State of New York v King (36 N.Y.2d 59) by its emphasis on the necessity in law for an error-correcting "remedy" for the prosecutor's "grievance" (majority opn, at 359). In King, then-Chief Judge Breitel, writing for a unanimous Court, concluded that prohibition did not lie to preempt an egregious, prejudicial and unreviewable error of law involving a trial court grant of excessive peremptory challenges in a criminal action (id., at 61-62). This Court further observed in King that the excesses of jurisdiction and power in criminal actions which justify "the abrupt intervention of prohibition * * * always invoke, as for example in the instance of double jeopardy, an unlawful use or abuse of the entire action or proceeding" (id., at 64 [emphasis added]; see also, Matter of Holtzman v Goldman, 71 N.Y.2d 564, 570 [allowing prohibition because the trial court's error "affected the entire proceeding in the most conclusive manner; it terminated the case"]). No such extension or pervasive abuse of power affecting the entirety of a criminal proceeding occurred here. Rather, the trial court attempted to continue to exercise discretion within its statutorily delegated powers concerning part of a split sentence.
This Court also cautioned in King (supra) that an "unsound and novel extension of the extraordinary ancient remed[y] of prohibition * * * might be a credit to man's ingenuity but a disabling discredit to the jurisprudence" (id., at 65 [emphasis added]). The utilization in this case now specifically extends the availability of prohibition for the first time to parts of the sentencing phase of a criminal proceeding and generally into the field of authorized trial court supervision of conditions of probation. This additionally and precedentially strengthens the procedural hand of one party (the prosecutor), not only over defendants but especially over neutral Magistrates, who should equally oversee both contending parties before courts.
To be sure, this Court has restricted the authority of trial courts in sentencing contexts (see, People ex rel. Sedotto v Jackson, 307 N.Y. 291; People v Vasquez, 88 N.Y.2d 561, 580-581; People v Rodney E., 77 N.Y.2d 672), but it has not done so by prohibition that encroaches upon a trial court's monitoring and modification of a sentence intertwined with an arguable condition of probation. In Matter of Kisloff v Covington (73 N.Y.2d 445), for instance, this Court concluded that courts lack *362 inherent power to vacate an illegally imposed plea and sentence once the criminal proceeding has terminated by the entry of judgment (id., at 452). The Court there granted prohibition based on the "circumstances" of that case (id., at 449). That general proposition is significantly distinguishable from the controlling nature and particular factors of the instant case. Here, the dispute is not generally or essentially about power or the lack of power and its source. Rather, it is more specifically about whether a trial court has continuing supervision of a sentence, where the nuanced pivot of determination is whether the modified part of the sentence is a true condition of probation. The extension of the extraordinary writ of prohibition to this slice of the sentencing function and the particular sentence in this case represents an incrementalism irreconcilably away from this Court's governing precedents and principles concerning prohibition. That transforms the writ into a quite ordinary procedural tool and tactical weapon.
I agree without question that prohibition should be available to curtail judicial arrogation of power when the Legislature has "clearly" delimited the jurisdictional reach of courts as to the proceeding itself and when the remedy is "clearly" warranted. Just as surely, in my view, however, the writ should not be allowed to collaterally intercept and interrupt parts of proceedings, which are regular and literally authorized on their face. This is especially so when courts are simply going about the day-to-day interpretation and application of statutorily prescribed authority that the prosecutor checkmates by claiming the trial court is acting ultra vires. Indeed, the majority's nuanced reliance on context and history would seem to belie the clear entitlement prerequisite. The straightforward analysis respectfully proffered by this dissenting viewpoint does not beg the somewhat tautological jurisdiction question always inherently complicating a prohibition question. Lastly, our New York State Supreme Court's handling of Antinore v Genesee County Local Conditional Release Commn. (146 Misc 2d 520), relied upon significantly by the majority, is plainly distinguishable and in no event binding on this Court.
The invocation of prohibition in this case, in the final analysis, entangles the writ and the matter in a purely statutory interpretation exercise. The root tension between the contenders for power  the prosecutor and the court  boils down to a defensible statutory interpretation of concededly delegated trial court authority and supervision over a defendant with an arguable condition of probation imposed on him. On the merits, *363 the final judgment here ultimately limits sentencing Judges and places defendants within the combined power of the prosecution and corrections authorities, out of the reach of neutral Magistrates trying diligently to implement and manage split sentence modalities and appropriate alternatives to incarceration measures. If policy matters were relevant to the precise disposition of the issue in this kind of case, I would cogently press that point. Ironically, the majority, instead, enters the policy calculations by weighing society's and victims' interests, which neither I nor anyone else would gainsay. It even grants hierarchal primacy to the prosecutor over the trial courts' general supervision of plea negotiation outcomes as they flow from the pros, cons and factors of a particular plea negotiation context. The flaw of this part of the majority's analysis is that policy factors should have no place in anyone's side of this purely prohibition-writ case.
Judgment reversed, etc.
NOTES
[1] The court's ruling was made before this Court held in People v McNair (87 N.Y.2d 772) that confinement with electronic monitoring was not a legally permissible condition of probation under the existing statutory scheme.
[2] Petitioner brought the proceeding against Cohen, Judge Angiolillo and Rocco Pozzi, the Commissioner of the Westchester County Probation Department. She served all three of the named party respondents, but only the latter two appeared.
[3] Leave to appeal from the Appellate Division order dismissing her direct appeal from Judge Angiolillo's order was denied (88 N.Y.2d 934).
[4] To the extent that the dissent rests on the tacit assumption that the District Attorney's petition involves only legal error, its rationale is irreconcilable with this Court's consistent treatment of sentencing dispositions outside the statutory prescriptions as flaws rising to the level of jurisdictional defects (see, e.g., People v David, 65 N.Y.2d 809; People v Morse, 62 N.Y.2d 205, 214, n 2; People v Fuller, 57 N.Y.2d 152, 156). To the extent that the dissent rests on the premise that this case involves "the day-to-day interpretation and application of statutorily prescribed authority" (dissenting opn, at 362), its analysis begs the very question petitioner proffers, i.e., whether authority for the Judge's order can be found in the statute.
[5] Respondent Pozzi also cited a 1984 amendment (L 1984, ch 548), which, he asserted, added new language to Penal Law § 60.01 (2) (d). In fact, the cited enactment amended several other subdivisions of Penal Law § 60.01 (see, subd [3] [a], [e] and subd [4]), but did not directly or indirectly affect the language or meaning of subdivision (2) (d).
[6] The "restrictive" court decision was not identified in the Memorandum in Support, but one commentator has speculated that an unreported Westchester County case, People v Larkin, was the one that the Legislature had in mind (Hechtman, 1978 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 39 [1975 ed], Penal Law § 60.01, 1987 Supp Pamph, at 90).