[710 NYS2d 399]

In the Matter of GERALD F. MOLLEN, as District Attorney of
Broome County, Petitioner, v PATRICK H. MATHEWS, as
Broome County Judge, et al., Respondents.

Third Department, May 18, 2000

### APPEARANCES OF COUNSEL

*Gerald F. Mollen, District Attorney* of Broome County, Binghamton, petitioner *pro se.*

*Eliot Spitzer, Attorney General,* Albany (*Marlene O. Tuczinski* of counsel), for Patrick H. Mathews, respondent.

*Bruce S. Dix, Mental Hygiene Legal Service,* Albany (*Sheila E. Shea* of counsel), for Francis X. Martin, respondent.

### OPINION OF THE COURT

MERCURE, J.

Based upon evidence that on November 19, 1995 respondent

Francis X. Martin discharged a shotgun in the direction of another person, he was arrested and ultimately indicted for reckless endangerment in the first degree, a class D felony, in violation of Penal Law § 120.25. On December 5, 1995, respondent Broome County Judge ordered a psychiatric examination to determine Martin's capacity to stand trial. Following his examination, clinical psychologist Joseph McCann issued a report stating his opinion that Martin's "delusional thinking and circumstantial thought processes interfere with his capacity to appreciate the charges against him and to assist in his defense in a realistic and logical fashion." On March 4, 1996, the County Judge signed an order of commitment for appropriate care and treatment, and Martin was admitted to Mid-Hudson Psychiatric Center on March 6, 1996.

While at Mid-Hudson, Martin responded dramatically to injections of antipsychotic medication and in July 1996, two psychiatrists concluded that Martin was then competent to stand trial. As a result, Martin was discharged and returned to the Broome County Jail. The County Judge issued a further order for a psychiatric examination pursuant to CPL article 730. Based upon Martin's refusal to submit to the examination, the County Judge concluded that Martin lacked capacity to understand the proceedings against him or to assist in his own defense and in November 1996 issued a further order of commitment. Martin was thereafter committed to Central New York Psychiatric Center.

In June 1998, the executive director of that facility gave notice of Martin's fitness to proceed based upon the report and opinion of two psychiatrists that Martin did not as a result of mental disease or defect lack the capacity to understand the proceedings against him or to assist in his own defense. On August 14, 1998, a hearing was held before the County Judge with psychiatrist Anthony La Monaca, Martin and Martin's son testifying. Despite La Monaca's uncontradicted medical opinion that Martin did not lack the capacity to understand the proceedings against him or to assist in his own defense, based upon Martin's genuine, but wholly unfounded, belief that he discharged his shotgun in order to repel five assailants who were shooting at him, and refusal to accept the fact that he was mentally ill or required antipsychotic medication to suppress his delusional disorder, on October 26, 1998 the County Judge concluded that Martin's fitness to proceed had not been established by a preponderance of the evidence. The essence of the County Judge's rationale can be discerned from

the following passage from his written decision: "[Martin] has, as a result of mental illness, a distorted perception of the event which no one can persuade him is distorted. He has a legitimate defense of Not Guilty by Reason of Mental Disease or Defect which he is unable to embrace because of a lack of insight into his mental illness. As a consequence, he persists in his refusal to permit his attorney to interpose this legitimate defense and desires [that] the case go to trial on his claim of self defense which is completely without merit."

Having been advised that Central New York Psychiatric Center intended to perform a further examination and would again find Martin to be fit to proceed, on February 10, 1999 Martin's attorney filed a motion seeking that the County Judge (1) appoint a psychiatrist to examine Martin and render an opinion regarding his capacity or, as an alternative, (2) dismiss the indictment in the furtherance of justice, and (3) conduct a hearing pursuant to *People v Aponte* (28 NY2d 343). During the pendency of the motion, the psychiatric center issued a notice of Martin's fitness to proceed based upon the examinations and reports of a psychiatrist and a psychologist.

On May 20, 1999, a hearing was held before the County Judge. At the hearing, psychologist Carlton Aldrich testified that Martin was fit to stand trial despite Martin's insistence that he fired the shotgun in self-defense and that he is not mentally ill because his mental illness was in remission due to medication. At the conclusion of the hearing, the County Judge reiterated his prior position that Martin was incapacitated because of the delusional belief that he discharged his shotgun in self-defense, stated the further conclusion that Martin would never be able to clear those delusional beliefs, and therefore "[felt] constrained to grant the defense motion under *Jackson*."[1] On that same day, the County Judge issued an order granting Martin's motion and committing him for a period not to exceed six months, to be dealt with in accordance with the provisions of Mental Hygiene Law article 9.

On September 20, 1999, petitioner, the Broome County District Attorney, commenced this CPLR article 78 proceeding seeking to prohibit the County Judge from enforcing his May 20, 1999 order upon the ground that the County Judge

---

1. In their briefs, petitioner portrays the May 20, 1999 hearing as having constituted a competency hearing, whereas Martin alleges that the hearing was conducted pursuant to *Jackson v Indiana* (406 US 715). Notably, our review of Martin's motion papers reveals no prayer for relief under *Jackson v Indiana* (*supra*).

exceeded his authority and jurisdiction in finding Martin unfit to proceed, in determining that he would not be fit in the foreseeable future, and in consequently releasing Martin from criminal custody.

■ The threshold inquiry is whether the extraordinary remedy of prohibition will lie in this case. Resolution of that issue requires a three-part consideration of whether (1) the County Judge acted without jurisdiction or exceeded his authorized powers in a proceeding over which he had jurisdiction (*see, Matter of Lungen v Kane*, 88 NY2d 861, 862; *Matter of McGinley v Hynes*, 51 NY2d 116, 122, *cert denied* 450 US 918; *La Rocca v Lane*, 37 NY2d 575, 578-579, *cert denied* 424 US 968), (2) petitioner has a " 'clear legal right' " to the relief requested (*Matter of Pirro v Angiolillo*, 89 NY2d 351, 359; *Matter of Holtzman v Goldman*, 71 NY2d 564, 569), and (3) such factors as "the gravity of the harm that would result from the act to be prohibited and whether that harm can be adequately corrected through an appeal or other proceedings at law or in equity" warrant the exercise of our discretion in the matter (*Matter of Pirro v Angiolillo, supra*, at 359; *see, Matter of Rush v Mordue*, 68 NY2d 348, 354; *see also, Matter of Holtzman v Goldman, supra*, at 569; *La Rocca v Lane, supra*, at 579).

Within the context of a pending criminal matter, the general rule is that the excess of jurisdiction or power must "always invoke * * * an unlawful use or abuse of the entire action or proceeding as distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding" (*Matter of State of New York v King*, 36 NY2d 59, 64; *see, Matter of Rush v Mordue, supra*, at 353; *Matter of Steingut v Gold*, 42 NY2d 311, 315). Exceptions are rare, and all have involved fundamental rights or concerns (*see, e.g., La Rocca v Lane, supra*, at 581 ["preferred" right to free exercise of religion]; *Matter of Proskin v County Ct.*, 30 NY2d 15, 19 ["cloak of secrecy accorded Grand Jury proceedings for the protection of the public, witnesses, potential defendants, and others"]). In any event, "prohibition will not lie as a means of seeking collateral review of mere trial errors of substantive law or procedure, however egregious the error may be, and however cleverly the error may be characterized by counsel as an excess of jurisdiction or power" (*Matter of Rush v Mordue, supra*, at 353; *see, Matter of State of New York v King, supra*, at 62).

Although the distinction is not always clear, "abuses of power may be identified by their impact upon the entire proceeding

as distinguished from an error in a proceeding itself proper" (*Matter of Holtzman v Goldman, supra*, at 569; *see, Matter of State of New York v King, supra*, at 64). Examining the matter in such a light, it is our view that petitioner has made a sufficient showing that, if in error, the County Judge exceeded his jurisdiction in making the challenged determinations and orders. Although not bringing about an outright dismissal of the indictment (*cf., Matter of Holtzman v Goldman, supra*), the County Judge's various determinations finding Martin to be an incapacitated person, his ultimate conclusion that there was no substantial probability that Martin would be fit to stand trial in the foreseeable future and Martin's civil commitment had the practical effect of bringing an end to the prosecution. Notably, the criminal proceeding against Martin will terminate by operation of law at the expiration of two thirds of the maximum term of imprisonment for the only offense charged in the indictment, which is a class D felony, and the indictment must then be dismissed with prejudice (*see*, CPL 730.50 [3], [4]).

Obviously, an order that prevents a District Attorney from prosecuting a pending indictment interferes with a clear legal right (*see, Matter of Holtzman v Goldman, supra*, at 570), so "it remains for us to determine whether the discretionary factors that have previously been considered in prohibition proceedings are present in this case" (*Matter of Pirro v Angiolillo, supra*, at 359; *see, Matter of Rush v Mordue, supra*, at 354). In our view, the gravity of the harm from the act to be prohibited is manifest. The public interest in prosecution and punishment for a serious felony offense will have been thwarted (*see, Matter of Pirro v Angiolillo, supra*, at 359-360; *Matter of Holtzman v Goldman, supra*, at 569-570). Further, petitioner is correct in his assertion that he has no right of direct appeal from the County Judge's order of May 20, 1999 or any of the prior orders determining Martin to lack capacity to assist in his own defense. CPL 450.20, which provides the exclusive basis for appeal by the People, does not encompass the orders at issue here (*see, People v Laing*, 79 NY2d 166). Therefore, petitioner has no other adequate remedy at law for his grievance (*see, Matter of Pirro v Angiolillo, supra*, at 359). In view of the foregoing, we determine that the remedy of prohibition is appropriate; we shall accordingly proceed to the merits of the application.

■ Unlike respondents, we do not subscribe to the view that the County Judge's focus on Martin's Federal and State constitutional rights under *Jackson v Indiana* (406 US 715,

*supra*) justified his purposeful refusal to comply with the requirements of CPL article 730 in making his various orders concerning Martin's incapacity.[2] As relevant to the facts of this case, *Jackson v Indiana* merely stands for the proposition that: "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant" (*supra,* at 738).

As such, there can be no doubt that a proper determination of incapacity, made under and in accordance with the provisions of CPL article 730, is a prerequisite to relief under *Jackson v Indiana* (*supra*) and CPL 730.50, the New York statutory counterpart placing limitations on the time of commitment of incapacitated criminal defendants.

As properly contended by petitioner, the County Judge's findings of incapacity embodied in his orders of October 26, 1998 and May 20, 1999 were made in clear contravention of the requirements of CPL 730.30. Each of those orders was preceded by examination reports and hearing testimony setting forth unanimous psychiatric opinion that Martin was not an incapacitated person. Given that opinion and pursuant to CPL 730.30 (2) (applicable to criminal defendants who have already been committed by virtue of CPL 730.60 [2]), the County Judge had no discretion to make a finding that Martin was an incapacitated person. Rather, his choices were to permit the crimi-

---

**2.** At the May 20, 1999 hearing, the County Judge responded to petitioner's claim of reliance upon CPL 730.30 (2) in the following manner:

"In that sidebar conference, you raised a point that you felt that the Court was constrained by the statute to order another psychiatric examination of [Martin] because * * * apparently there's never been a medical doctor who has ever stated that [Martin] was incompetent.

"My position on that is that at this stage and in this proceeding, I'm not under the constraints of [CPL article 730], so I don't think I have to address your issue. But you've certainly raised it and noted it.

"I think when you get involved in a *Jackson* hearing, you're basically concerned with Federal and State constitutional rights, and notwithstanding any statutory provision there, I believe that this Court on the record has a right to consider the testimony of all medical experts, and notwithstanding the fact that there may never have been one who's agreed with the Court's legal definition of competency as it relates to this case * * * I do not consider myself under constraint to follow their medical opinion."

nal action to proceed or, if he was not satisfied that Martin was not an incapacitated person, to "issue a further order of examination directing that [he] be examined by different psychiatric examiners" (CPL 730.30 [2]).

As a final matter, although not essential to our determination, we also note our disagreement with the County Judge's central thesis that Martin's delusional beliefs made it impossible for him to meaningfully assist in his own defense. As pointed out by petitioner, even an amnesia victim, lacking any recollection of the crucial events underlying his offense, may be found fit to stand trial under CPL 730.10 (1) (*see, People v Francabandera*, 33 NY2d 429; *People v Goodell*, 164 AD2d 321, 327, *affd* 79 NY2d 869). In this case, although believing that he discharged his weapon in self-defense, Martin was fully cognizant that there may be no persuasive evidence to support that view, in which case he would be better off pursuing a plea bargain. On the record before us, we find no reasonable basis for the County Judge's determination that Martin was not fit to stand trial. That is not to say, however, that the County Judge is precluded from hereafter making such a determination should a further psychiatric examination conducted pursuant to CPL 730.30 (2) provide a competent basis therefor.

CARDONA, P. J., CARPINELLO, GRAFFEO and MUGGLIN, JJ., concur.

Adjudged that the petition is granted, without costs, and respondent Broome County Judge is prohibited from enforcing so much of his May 20, 1999 order as found respondent Francis X. Martin to be an incapacitated person in connection with indictment No. 95-718 and released him from criminal custody.