People v Sabb (2025 NY Slip Op 02624)

People v Sabb

2025 NY Slip Op 02624

Decided on May 1, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 1, 2025

113690
[*1]The People of the State of New York, Respondent,
v
Jhajuan Sabb, Appellant.

Calendar Date:January 15, 2025

Before:Egan Jr., J.P., Aarons, Fisher, McShan and Mackey, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
Lee C. Kindlon, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered August 19, 2022 in Albany County, convicting defendant upon his plea of guilty of the crimes of manslaughter in the first degree and attempted assault in the first degree.
In July 2021, defendant was charged by indictment with two counts of murder in the second degree (counts 1 and 2), four counts of attempted assault in the first degree (counts 3, 4, 5 and 6) and one count of criminal possession of a weapon in the second degree (count 7), in connection with a drive-by shooting that resulted in gunshot wounds to multiple victims, including fatal injuries to one victim. Defendant moved to suppress evidence obtained pursuant to a search warrant and police interview, and such motion was denied after a hearing. Thereafter, in satisfaction of the indictment, defendant pleaded guilty to manslaughter in the first degree — a lesser included offense to count 1 of the indictment — and attempted assault in the first degree (count 4), and further agreed to waive his right to appeal. In accordance with the terms of the plea agreement, Supreme Court sentenced defendant, as a second violent felony offender, to a prison term of 25 years, to be followed by five years of postrelease supervision, upon his manslaughter conviction, and to a consecutive prison term of 10 years, to be followed by five years of postrelease supervision, upon his attempted assault in the first degree conviction. Defendant appeals.
Defendant contends that the imposition of consecutive sentences was illegal because there is no evidence in the record to suggest that the victims were wounded by separate and distinct acts.[FN1] We are constrained to agree. "Consecutive sentences are appropriate only when either the elements of the crimes do not overlap or if the facts demonstrate that the defendant's acts underlying the crimes are separate and distinct" (People v Banks, 181 AD3d 973, 977 [3d Dept 2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1025 [2020]; see Penal Law § 70.25 [2]). The People bear the burden of establishing the legality of consecutive sentences and, when a defendant pleads guilty to a count in the indictment, may meet their burden by relying on the allegations in the accusatory instrument and any facts adduced at the plea allocution (see People v Light, 184 AD3d 904, 906 [3d Dept 2020]). Where, as here, a defendant also pleads guilty to a lesser offense than that charged in the indictment, the People may only rely upon those facts and circumstances admitted during the plea allocution with respect to that count (see People v Laureano, 87 NY2d 640, 644-645 [1996]; People v Wright, 229 AD3d 1094, 1095 [4th Dept 2024]; People v Robinson, 178 AD3d 861, 862 [2d Dept 2019]). To this point, the facts necessary to support consecutive sentences may not be discerned from statements included in a presentence report (see People v Mangarillo, 152 AD3d 1061, 1062-1063 [3d Dept 2017][*2][holding that, to the extent this Court's prior decisions have held otherwise, they should no longer be followed]).
Viewed against that backdrop, we conclude that the People failed to meet their burden inasmuch as there are no facts alleged in the count of the indictment to which defendant pleaded guilty, or in the plea allocution relating to either count, that would establish that defendant's "shooting a firearm," which constituted manslaughter in the first degree by causing the death of the victim (count 1) and attempted assault in the first degree to a different victim (count 4), "arose from a separate and distinct pull of the trigger by defendant" (People v Banks, 181 AD3d at 977 [internal quotation marks and citation omitted]; compare People v Moon, 119 AD3d 1293, 1295 [3d Dept 2014], lv denied 24 NY3d 1004 [2014]). Indeed, the People advanced no facts supporting the view that the victim of the attempted assault was injured by an act other than the homicidal act in count 1 (see People v Laureano, 87 NY2d at 645). The plea allocution included the recitation of the same date, time and location for each count, and there was no indication in either count that the victims were hit by different bullets — or even whether more than one shot was fired at all (see People v Jones, 122 AD3d 1161, 1161-1162 [3d Dept 2014]; People v Jones, 41 AD3d 507, 509 [2d Dept 2007], lv denied 9 NY3d 877 [2007]). This is further significant because defendant was not the only shooter, but was acting in concert with another individual in the backseat who had also fired upon the victims. Although the outcome may have been different if there was a more developed record from which evidence could have been drawn on to support the imposition of consecutive sentences, such as if there been a trial, as in the distinguishable cases that the People rely on (see People v McKnight, 16 NY3d 43, 49-50 [2010]; People v Azaz, 10 NY3d 873, 875 [2010]), or if there had been a more thorough allocution containing more than one-word responses from defendant (compare People v Redden, 182 AD3d 926, 928 [3d Dept 2020], lv denied 35 NY3d 1115 [2020]; People v Parks, 180 AD3d 1109, 1110 [3d Dept 2020]), neither is true in the record before us (see People v Dean, 8 NY3d 929, 930-931 [2007]; People v Parker, 203 AD3d 1341, 1342-1343 [3d Dept 2022]; People v Boyd, 192 AD3d 1659, 1661 [3d Dept 2021]).[FN2] Accordingly, the sentence imposed on defendant is illegal and must be addressed.
In doing so, we recognize that the outcome dictated by law impacts the People's consent to the plea, which was premised on a negotiated sentence. Although it is true that the People should be given an opportunity to withdraw their consent to a plea when the negotiated sentence is being decreased, it is also true that such application is not automatically granted, but rather triggers an evaluation of whether "prejudice to a defendant following a plea may prevent restoration to status quo ante and render vacatur of the plea [*3]inappropriate" (People v Farrar, 52 NY2d 302, 308 [1981]). To this point, we further recognize that defendant's initial brief invited the People to elect between vacating the plea entirely or allowing this Court to modify the sentence automatically. However, the People failed to address such statement in their response brief or at oral argument, other than maintaining their position that consecutive sentences were proper. They are not. Had the People sought vacatur, defendant could then oppose the application by making a "showing of such prejudice or other circumstances militating against vacatur" (id.). But without the People raising such issue, and the default being for the Court to automatically modify the sentence (see People v Mangarillo, 152 AD3d at 1063; see also People v Laureano, 87 NY2d at 645), defendant had no reason to develop an unraised issue in the record and, rather, rested on his argument that the sentence was illegal and should be modified to run concurrently. Based on the foregoing, "[s]ince the People did not request vacatur of defendant's guilty plea, we will not consider whether that would be a proper remedy and conclude that the judgment must be modified to order that the sentences run concurrently" (People v Mangarillo, 152 AD3d at 1063; see People v Laureano, 87 NY2d at 645; People v Leabo, 84 NY2d 952, 953 [1994]; see generally People v Banks, 181 AD3d at 977).
Lastly, defendant's challenges to the determination on his suppression motion and severity of his sentence are foreclosed by his valid waiver of appeal, which was recited as a condition of the plea agreement. Initially, we note that we have recently held the near-identical combined oral and written waiver employed by Supreme Court to be valid (see People v Lane, 233 AD3d 1207, 1208 [3d Dept 2024], lv denied ___ NY3d ___ [Mar. 18, 2025]; People v Joseph, 227 AD3d 1233, 1234-1235 [3d Dept 2024], lv denied 42 NY3d 1053 [2024]). Although we have concern over the imprecise explanation used by the court, specifically that defendant was waiving the "right to appeal [his] guilty plea, the conviction that results from that plea and the sentence that results from that conviction, both Constitutionally and otherwise" (emphasis added) — a point that could be misleading or ambiguous — the written waiver of appeal contained the correct recitation of the nature of defendant's rights being waived, which were separate and distinct from the trial-related rights automatically forfeited by a guilty plea (see People v Lopez, 6 NY3d 248, 256 [2006]; People v Baker, 221 AD3d 1198, 1198 [3d Dept 2024], lv denied 40 NY3d 1091 [2024]). In addition, the written appeal waiver, which was executed in open court after conferring with counsel, also set forth the specific, various rights being waived and which rights nevertheless survived the appeal waiver, and included a confirmation by defendant that he had a "full opportunity" to discuss these rights and that any questions he had were answered [*4]to his satisfaction by his attorney (see People v Ramos, 7 NY3d 737, 738 [2006]; People v Taylor, 228 AD3d 1144, 1145 [3d Dept 2024], lv denied 42 NY3d 1022 [2024]; People v Baker, 221 AD3d at 1199). After conferring with counsel and signing the written appeal waiver, defendant then again confirmed to the court that he understood the nature of his rights being waived, had no further questions of the court or his counsel and desired to proceed (see People v Taylor, 228 AD3d at 1145). Based on the foregoing, the combination of the written appeal waiver that was reviewed with counsel and defendant's on-the-record acknowledgement overcame the ambiguities in the oral colloquy, and, therefore, we are satisfied that "the totality of the circumstances reveals that the defendant understood the nature of the appellate rights being waived" (People v Thomas, 34 NY3d 545, 559 [2019]; see People v Ramos, 7 NY3d at 738; People v Joseph, 227 AD3d at 1235). We have considered defendant's remaining contentions and have found them to be without merit or rendered academic.
Aarons and McShan, JJ., concur.
Egan Jr., J.P. (concurring in part and dissenting in part).
We respectfully dissent insofar as our colleagues conclude that the consecutive sentences imposed by Supreme Court were illegal.
As the majority notes, defendant was charged in a seven-count indictment with offenses relating to the drive-by shooting of five people who were standing on a street corner in the City of Albany on the afternoon of May 21, 2021. One of the five victims died of his injuries. Defendant decided to accept a plea bargain proposal in which he would admit to shooting two of the victims, either personally or acting in concert with the other shooter in the vehicle, pleading guilty to manslaughter in the first degree relating to the victim who died and attempted assault in the first degree relating to one of the victims who survived. The plea agreement provided that he would be sentenced on those convictions to, respectively, 25 years in prison, to be followed by five years of postrelease supervision, and 10 years in prison, to be followed by five years of postrelease supervision, to be served consecutively. At the formal plea allocution on June 14, 2022, defendant admitted to shooting two different people, Sharaf Addailam and Ahquis Tarver, either personally or acting in concert with another, and pleaded guilty to two separate felonies, manslaughter in the first degree and attempted assault in the first degree. At no time did defendant raise the proposition that both victims were shot with one bullet.
At sentencing on August 19, 2022, the terms of the plea agreement were reiterated and defendant was given an opportunity to speak. Defendant had nothing to say. Supreme Court then sentenced defendant, as agreed, to 25 years in prison and five years of postrelease supervision on the manslaughter conviction and 10 years in prison and five years of postrelease supervision on the attempted [*5]assault conviction, those sentences to run consecutively. At no time during sentencing did defendant raise the proposition that both victims were shot with one bullet, nor was there any objection to the imposition of consecutive sentences. The record also gives no reason to believe that defendant thereafter moved to vacate the judgment of conviction or set aside the sentence upon the ground that the agreed-upon sentence was illegal.
Now, on appeal, defendant argues that the agreement that he made with the People is partially illegal because of the consecutive nature of the sentencing. He argues that Supreme Court could not legally impose those agreed-upon consecutive sentences because the People did not demonstrate that the manslaughter and attempted assault convictions involved "separate and distinct" acts as required (People v Banks, 181 AD3d 973, 977 [3d Dept 2020] [internal quotation marks and citation omitted], lv denied 35 NY3d 1025 [2020]; see Penal Law § 70.25 [2]; People v Laureano, 87 NY2d 640, 643 [1996]; People v Pena, 259 AD2d 394, 395 [1st Dept 1999], lv denied 93 NY2d 1005 [1999]). It is true that, at the plea allocution, no one asked defendant whether he had shot both victims (or all five of the people who were hit, for that matter) with only one bullet, but he was asked separately whether he had personally, or acting in concert with another, shot both victims. He admitted that he had, and he did not qualify his answer with the caveat that he had only fired one time.
That said, "[i]n any case where a person is convicted of a felony, the court must order a pre-sentence investigation of the defendant and it may not pronounce sentence until it has received a written report of such investigation" (CPL 390.20 [1]). This reflects the reality that a court's discretion in sentencing "cannot be fixed immutably at the time of the plea, for the decision requires information that may be unavailable then" (People v Farrar, 52 NY2d 302, 306 [1981]). The court must instead "impose sentence 'only after careful consideration of all facts available at the time of sentencing' " (People v Clark, 61 AD3d 1179, 1181 [3d Dept 2009], lv denied 12 NY3d 924 [2009], quoting People v Farrar, 52 NY2d at 305), which includes the information set forth in that presentence report prepared "to assist [the] criminal court in determining the appropriate sentence" (People v Diaz, 34 NY3d 1179, 1181 [2020]; see CPL 390.30; People v Clark, 61 AD3d at 1181). In the presentence report ordered by Supreme Court upon defendant's plea, the probation officer who prepared the report relied upon police records to describe how defendant was a passenger in a vehicle and "intentionally fired several shots" at the five individuals who were struck. The report further described how defendant and his accomplice fired 16 rounds in total from the vehicle.[FN3] The report was provided to Supreme Court, the People and defendant, all of whom reviewed it before sentencing. At no time during sentencing [*6]did defendant dispute the description of this incident that led to the charges to which he pleaded guilty (see CPL 400.10).
Supreme Court was obliged to, and did, consider the unchallenged information in the presentence report regarding "the circumstances attending the commission of the offense" in addition to the facts admitted during the plea colloquy, and that information reflected that defendant and his accomplice drove by the crowd of people on the street and fired 16 separate shots toward them, striking the two victims at issue as well as three other people (CPL 390.30 [1]; see People v Selikoff, 35 NY2d 227, 237-238 [1974], cert denied 419 US 1122 [1975]). Supreme Court obviously considered that information regarding the circumstances of the offense when it determined that the agreed-upon consecutive sentences were lawful and appropriate (see People v Clark, 61 AD3d at 1181). Moreover, to the extent that this Court's prior precedent can be read as foreclosing the consideration of any facts contained in the presentence report (see People v Mangarillo, 152 AD3d 1061, 1062-1063 [3d Dept 2017]), that reading cannot stand in the face of the "law and strong public policy" requiring that any sentence promised under a plea agreement be "lawful and appropriate in light of the subsequent presentence report or information contained from other reliable sources" (People v Selikoff, 35 NY2d at 238; see People v Farrar, 52 NY2d at 306). Thus, under "the circumstances surrounding the shooting of the two individuals," we are satisfied "that there was a sufficient factual basis for the court to conclude that the victims were wounded by different bullets, thereby supporting the imposition of consecutive sentences" (People v Rivera, 262 AD2d 31, 31 [1st Dept 1999], lv denied 93 NY2d 1025 [1999]; see People v McKnight, 16 NY3d 43, 48-49 [2010]; People v Holmes, 92 AD3d 957, 957 [2d Dept 2012], lv denied 19 NY3d 961 [2012]; People v Saulters, 255 AD2d 896, 896 [4th Dept 1998], lv denied 92 NY2d 1038 [1998]).
Finally, a plea bargain is an agreement between the People and a defendant, and the bargain here included a sentencing component "represent[ing] a determination by the District Attorney that the ends of justice would be best served by trading the possibility of a harsher penalty for the certainty of a specific jail term" (Matter of Pirro v Angiolillo, 89 NY2d 351, 359 [1996]). Accordingly, to the extent the majority is correct in its conclusion that the imposition of consecutive sentences in this case was illegal, we further disagree with its proposed remedy of ordering that the sentences run concurrently. The People rightfully complain in their brief that they are entitled to the benefit of their bargain and, as the illegality of the agreed-upon sentences would deprive them of that benefit, "the sentence [in that event] must be reversed and the case remitted for resentencing with the opportunity for [either party] to withdraw from the plea agreement" (People [*7]v Cameron, 83 NY2d 838, 840 [1994]; compare People v Laureano, 87 NY2d at 645).
Mackey, J., concurs.
ORDERED that the judgment is modified, on the law, by directing that defendant's sentences shall run concurrently rather than consecutively, and, as so modified, affirmed.

Footnotes

Footnote 1: Such challenge survives a waiver of the right to appeal and a guilty plea, and does not require preservation (see People v Gatchell, 208 AD3d 1549, 1550 [3d Dept 2022]).

Footnote 2: To the extent that it is suggested "separate and distinct" acts may be gleaned from facts contained in defendant's presentence report, which noted that he had fired multiple shots at multiple victims, we take judicial notice of the presentence report that was filed in People v Banks (181 AD3d at 977), which had contained similar statements referencing repeated shots being fired at multiple victims, but such information was outside of the plea allocution and, therefore, could also not be used to support the imposition of consecutive sentences for multiple trigger pulls as "separate and distinct" acts (People v Mangarillo, 152 AD3d at 1062-1063; see People v Laureano, 87 NY2d at 644-645).

Footnote 3: Defendant himself was interviewed by the probation officer and, while he confirmed that he had pleaded guilty, he declined to offer any details as to his role in the shooting.