[930 NYS2d 610]

In the Matter of RICHARD A. BROWN, Petitioner, v JOEL L. BLU-
MENFELD et al., Respondents.

Second Department, October 4, 2011

**APPEARANCES OF COUNSEL**

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Ryan, James C. Quinn, Robert J. Masters*, and *Donna Aldea* of counsel), petitioner pro se.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Mark F. Pomerantz, William J. Taylor, Jr.*, and *Holly A. VanderSluis* of counsel), for Joel L. Blumenfeld, respondent.

*Thomas M. O'Brien*, New York City, for Legal Aid Society, amicus curiae.

*Green & Willstatter*, White Plains (*Richard D. Willstatter* of counsel) and *Mintz & Oppenheim LLP*, New York City (*Marshall A. Mintz* of counsel), for New York State Association of Criminal Defense Lawyers (one brief filed), amicus curiae.

*Lawrence J. Fox*, New York City, amicus curiae pro se, and for Monroe H. Freedman and others, amici curiae.

*Frankfurt Kurnit Klein & Selz, P.C.,* New York City (*Ronald C. Minkoff* pro se, *Lia N. Brooks, Ellen Brotman* pro se, *Lawrence J. Fox* pro se, *Peter Margulies* pro se and *J. Richard Supple* pro se of counsel), for New York County Lawyers Association Ethics Institute and others, amici curiae

*Schulte Roth & Zabel LLP,* New York City (*Michael E. Swartz, Sami B. Groff* and *Katherine L. Scheuerman* of counsel), for New York Council of Defense Lawyers, amicus curiae.

*Arthur Eisenberg,* New York City (*John Kenneth White, Taylor Pendergrass,* and *Christopher Dunn* of counsel), for New York Civil Liberties Union, amicus curiae.

*James P. Maxwell,* Syracuse (*Victoria M. White* of counsel), for District Attorneys Association of State of New York, amicus curiae.

### OPINION OF THE COURT

BALKIN, J.

In a criminal action entitled *People v Perez,* pending in the Supreme Court, Queens County, under indictment No. 1202/09, Elisaul Perez was charged with robbery in the first degree and other crimes. Perez moved to suppress certain evidence obtained from him (*see* CPL 710.20), and a hearing was ordered; the respondent Joel L. Blumenfeld, an Acting Justice of the Supreme Court,[1] conducted the hearing (*see* CPL 710.60). During the course of the proceedings, Justice Blumenfeld expressed concern about the manner in which the People obtained certain evidence against Perez. Specifically, Justice Blumenfeld questioned whether assistant district attorneys (hereinafter ADAs) employed by the petitioner, Richard A. Brown, the District Attorney of Queens County (hereinafter the District Attorney), who interviewed Perez pursuant to the District Attorney's Queens Central Booking Interview Program (hereinafter the Program) violated ethical requirements warranting suppression of a videotaped statement by Perez. In connection with these concerns, Justice Blumenfeld solicited an opinion from an outside ethics expert after receiving memoranda from Perez and the People about these ethical issues. After Justice Blumenfeld received the expert's report, he distributed it to the parties. The People made an application that Justice Blumenfeld strike the

---

1. Justice Blumenfeld was appointed by the Mayor of the City of New York to the Criminal Court of the City of New York, and he serves, by assignment of the Chief Administrator of the Courts, as an Acting Justice of the Supreme Court (*see* NY Const, art VI, § 26; 22 NYCRR 33.0, 121.1).

report. Justice Blumenfeld denied the application, stating that he would rule upon whether several ADAs violated ethical rules in the course of obtaining Perez's videotaped statement. Justice Blumenfeld has issued an interim ruling on the motion to suppress with respect to most of the evidence Perez sought suppressed, but not with respect to the videotaped statement.

The District Attorney, who represents the People in the criminal action, thereafter commenced this special proceeding pursuant to CPLR article 78 to prohibit Justice Blumenfeld from, among other things, considering the expert's report and ruling upon whether the ADAs violated ethical rules in obtaining Perez's videotaped statement. The District Attorney contends that, in deciding that branch of Perez's omnibus motion which was to suppress the videotaped statement, Justice Blumenfeld is limited to considering whether Perez's videotaped statement was "involuntarily made" (CPL 60.45 [1]), and that a violation of an ethical rule does not in itself constitute a ground for suppression.

The District Attorney advised Justice Blumenfeld of his intent to commence this special proceeding, and Justice Blumenfeld agreed to stay the proceedings in *People v Perez* pending this Court's determination.

I.

Shortly after midnight on March 13, 2009, two men allegedly assaulted and robbed a man on a street in Queens County. A few minutes later, the police arrested Perez and, after obtaining an inculpatory written statement from him, eventually took him to the Queens Central Booking (hereinafter QCB) facility in Kew Gardens and placed him in a holding cell. In accordance with the protocols of the Program, which the District Attorney had instituted in 2007, Perez was later taken to a room to meet with two ADAs and a detective investigator (hereinafter DI).

Under the Program, the District Attorney's ADAs and DIs interview individuals awaiting arraignment on felony charges, in a room equipped with visible videotaping equipment. An ADA or DI reads the arrestee a preprinted "Interview Form," which has been completed to be specific to the arrestee's case. The arrestee is told the date and time, that he or she is "in the interview room of the Queens County District Attorney's office in Central Booking, Queens," the names of the other people in the room, and their status as ADAs or DIs from the District Attorney's Office. The arrestee is then told that he or she has

been charged with certain specified crimes, as well as the dates, times, and locations of those crimes.

The version of the Interview Form in use when Perez was detained at QCB read as follows:

> "In a few moments I will be reading you your rights. After that, you will be given an opportunity to explain what you did and what occurred on (date) at (time) at (location), in Queens County.
>
> "If you have an alibi, please give us as much information as you can, including the names of any people you were with.
>
> "If your version of the events of that day differs from what we have heard, this is your opportunity to tell us your story.
>
> "If there is something you would like us to investigate concerning this incident, you must tell us now so that we can look into it.
>
> "Even if you have already spoken to someone else, you do not have to talk to me.
>
> "This will be the only opportunity you will have to talk to me prior to your arraignment on these charges.
>
> "This entire interview is being recorded with both video and sound."[2]

After being read the foregoing, the arrestee is advised of his or her right to be arraigned without undue delay. The arrestee is then given *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]), and the ADA or DI indicates on the Interview Form the arrestee's response to each of the warnings. The arrestee is then asked if he or she is willing to answer questions.[3]

In the instant matter, after Perez was read the contents of the Interview Form, he indicated that he understood each of the

---

**2.** It appears that, pursuant to a change in the Program made after the statement at issue in this proceeding was obtained, an arrestee is now told that "[i]f there is something you would like us to investigate concerning this incident, if you tell us about it, we will look into it," rather than being told that "[i]f there is something you would like us to investigate concerning this incident, you must tell us now so that we can look into it."

**3.** According to the District Attorney, of the 5,581 arrestees brought into the interview room at QCB during the three-year period after he instituted the Program, 19% confessed during an interview to the crimes for which they were arrested, and 44% made a statement during an interview about those crimes.

rights that was read to him and he agreed to answer questions. During the ensuing interview, he made certain inculpatory statements about the incident for which he was arrested.

## II.

After the completion of the interview at QCB, Perez was assigned counsel and arraigned on a felony complaint. Eventually, a grand jury returned an indictment charging him with two counts of robbery in the second degree, a class C felony (Penal Law § 160.10 [1], [2] [a]), and criminal possession of stolen property in the fifth degree, a class A misdemeanor (Penal Law § 165.40). Perez's attorney filed an omnibus motion seeking various relief, including suppression of the statements he had made to the police and to the ADAs and DI. The Supreme Court (Griffin, J.) ordered that a *Huntley* hearing (*see People v Huntley*, 15 NY2d 72 [1965]; CPL 710.60) be held.

At that suppression hearing, which was held before Justice Blumenfeld, the People introduced evidence that the ADAs who had interviewed Perez at QCB followed the Program procedures. After the parties rested at the hearing, they submitted written memoranda. As relevant here, Perez argued that the Program violated certain Disciplinary Rules, then codified in the Code of Professional Responsibility.[4] In their response, the People, also as relevant here, argued that Perez's statement at QCB was voluntarily made, but also that they did not violate those Disciplinary Rules.

Justice Blumenfeld notified the parties that he had sought "advice" (22 NYCRR 100.3 [B] [6] [b]) on the possible ethical issues implicated by portions of the Interview Form from Professor Ellen Yaroshefsky, who taught professional responsibility at Cardozo Law School. In her report (hereinafter the Report), dated April 14, 2010, Professor Yaroshefsky opined that the ADAs, in effectuating the general protocols of the Program, violated certain Disciplinary Rules in the interview with Perez. She expressly declined to opine, however,

> "as to the legality of this conduct and whether or not the statements and the interview, prior to the reading of *Miranda* rights, constitutes an interrogation or the functional equivalent of an interrogation, nor whether the statements are voluntary."

---

**4.** After the *Huntley* hearing in this case, New York adopted the Rules of Professional Conduct, but the substantive provisions relevant to this proceeding were not changed.

Justice Blumenfeld forwarded copies of the Report to the parties.

The People made an oral application to strike the Report, and they submitted two memoranda of law with respect to the issues in dispute, as well as opinions they had solicited from two experts in professional responsibility—the Honorable Joseph W. Bellacosa (a former Judge of the New York Court of Appeals) and Assistant Professor Marc O. DeGirolami of St. John's University School of Law. The People took issue with the Report's conclusions that the ADAs were violating their ethical responsibilities. More fundamentally, however, the People contended that Justice Blumenfeld could not properly consider, in the context of Perez's suppression motion, whether the ADAs who obtained Perez's statement did so in violation of the Disciplinary Rules, where the alleged violation did not "independently satisfy" a ground for suppression set forth in CPL 60.45. In this regard, the People essentially argued that any purported ethical violation had no bearing on the voluntariness of Perez's videotaped statement. According to the People, inasmuch as any purported violation in Perez's case arose *after* Perez made his statement, when the People purportedly failed to fulfill a promise they had made to him, any such violation could not have induced Perez to make his statement in the first instance. The People also argued that only violations of relevant constitutional or statutory provisions—as opposed to violations of ethical rules that, standing alone, may not independently impose constitutional or statutory protections—provide a basis for suppression of evidence (*cf. People v Burton*, 6 NY3d 584, 587 [2006]; *People v Mendoza*, 82 NY2d 415, 425 [1993]). The People thus contended that, inasmuch as the Report related to matters not properly before Justice Blumenfeld, it was improper for him to request the Report in the first place.

Justice Blumenfeld issued an "interim" order on August 12, 2011, in which he ruled on those branches of Perez's omnibus motion which were to suppress the evidence other than the videotaped statement he made at QCB in the presence of the ADAs and DI. Justice Blumenfeld suppressed certain physical evidence, but denied suppression of Perez's written statement. Justice Blumenfeld also denied the People's application to strike the Report, concluding that ethics issues "can be addressed in a motion to suppress statements pursuant to CPL 60.45." Justice Blumenfeld cited that portion of CPL 60.45 which defines the term "involuntarily made":

"A confession, admission or other statement is 'involuntarily made' by a defendant when it is obtained from him:

"(a) By any person . . . by means of . . . improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement" (CPL 60.45 [2]).

Justice Blumenfeld concluded that, in order to determine whether Perez's QCB statement was involuntary, it was necessary to determine whether there was "improper conduct" during the interview. Thus, he concluded that it was proper for him to consider whether the ADAs' conduct of interviews pursuant to the Program violated ethical rules. Consequently, Justice Blumenfeld stated that, when deciding that branch of Perez's omnibus motion which was to suppress the QCB statement, he would make a finding with respect to that issue. He invited the parties to brief the issue.

After Justice Blumenfeld issued his interim order, the District Attorney commenced this special proceeding (*see* CPLR 506 [b] [1]) in the nature of prohibition against Justice Blumenfeld and, nominally, Perez, to prohibit Justice Blumenfeld from, inter alia, considering whether the People violated the Rules of Professional Conduct and the former Code of Professional Responsibility, or making any finding in connection with whether the ADAs' conduct of interviews pursuant to the Program violated any of those Rules.

### III.

Prohibition is an "extraordinary" remedy (*Matter of Pirro v Angiolillo*, 89 NY2d 351, 360 [1996]; *Matter of Morgenthau v Altman*, 58 NY2d 1057, 1058 [1983]; *Matter of State of New York v King*, 36 NY2d 59, 62 [1975]).

"A writ of prohibition against a judge may be issued 'only when a court . . . acts or threatens to act without jurisdiction in a matter of . . . which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction' " (*Matter of Oglesby v McKinney*, 7 NY3d 561, 565 [2006], quoting *Matter of State of New York v King*, 36 NY2d at 62; *see Matter of Lungen v Kane*, 88 NY2d 861, 862 [1996]; *Matter of Holtzman v Goldman*, 71 NY2d 564, 569 [1988];

*Matter of Molea v Marasco*, 64 NY2d 718, 720 [1984]; *Matter of Morgenthau v Erlbaum*, 59 NY2d 143, 147 [1983], *cert denied* 464 US 993 [1983]; *Matter of Roberts v County Ct. of Wyoming County*, 34 NY2d 246, 248 [1974]; *Matter of Hogan v Culkin*, 18 NY2d 330, 336 [1966]).

"But even where the writ may be technically appropriate, the court must consider other factors such as the gravity of the potential harm caused by the threatened excess of power or whether other proceedings in law or equity could correct the flaw, in determining whether a proponent's request should ultimately be granted" (*Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d 783, 786 [1993]; *see Matter of Pirro v Angiolillo*, 89 NY2d at 359; *Matter of Morgenthau v Erlbaum*, 59 NY2d at 147; *La Rocca v Lane*, 37 NY2d 575, 579 [1975], *cert denied* 424 US 968 [1976]).

Thus, when a petitioner seeks a writ of prohibition, a court must engage in a two-tiered analysis (*see Matter of Holtzman v Goldman*, 71 NY2d at 568). The "threshold question" (*Matter of Vinluan v Doyle*, 60 AD3d 237, 243 [2009]), or "first issue" (*Matter of Sedore v Epstein*, 56 AD3d 60, 63 [2008]), is whether the issue presented is the type for which prohibition lies (*see Matter of Holtzman v Goldman*, 71 NY2d at 568). If so, the court must then consider whether prohibition should, in the court's discretion, be granted.

Here, the District Attorney contends that prohibition is warranted because Justice Blumenfeld, by considering and eventually making a finding with respect to the issue of whether the ADAs conducting interviews pursuant to the Program are violating ethical rules, has exceeded, and will continue to exceed, his authorized powers in *People v Perez*, a matter over which he indisputably has subject matter jurisdiction (*see Matter of Pirro v Angiolillo*, 89 NY2d at 355; *Matter of Proskin v County Ct. of Albany County*, 30 NY2d 15, 18 [1972]).[5]

Although the Court of Appeals has declined to detail the several categories of excesses of jurisdiction and power arising in

---

**5.** In making a finding as to whether ADAs conducting interviews pursuant to the Program are violating ethical rules, Justice Blumenfeld would not purport to be determining an application for discipline of those ADAs. Were he to do so, he clearly would be acting in " 'excess of [his] authorized powers' " (*Matter of Lungen v Kane*, 88 NY2d at 862, quoting *Matter of Holtzman v Goldman*, 71 NY2d at 569), because only the Appellate Division of the

*(n. cont'd)*

criminal actions that merit the "abrupt intervention of prohibition" (*Matter of State of New York v King*, 36 NY2d at 64), that Court has observed that those categories always "invoke . . . unlawful use or abuse of the entire action" or proceeding (*id.*), and "implicate the legality of the entire proceeding" (*Matter of Rush v Mordue*, 68 NY2d 348, 353 [1986]). This situation is to be "distinguished from an unlawful procedure or error in" the action or proceeding "itself related to the proper purpose of" the action or proceeding (*Matter of State of New York v King*, 36 NY2d at 64; *see Matter of Johnson v Torres*, 259 AD2d 370 [1999]).

Furthermore, prohibition is never available merely to correct or prevent a mistake, error in procedure, or error in substantive law (*see Matter of Oglesby v McKinney*, 7 NY3d at 565; *Matter of Morgenthau v Altman*, 58 NY2d at 1058), even when such errors may be "grievous" (*La Rocca v Lane*, 37 NY2d at 579), or "egregious" (*Matter of State of New York v King*, 36 NY2d at 62). The orderly administration of justice requires that correction of litigation errors be left to the ordinary channels of appeal or review (*see La Rocca v Lane*, 37 NY2d at 579). Were prohibition available to correct a mistake, error in procedure, or error in substantive law, an additional avenue of judicial scrutiny via a collateral proceeding would be erected, thereby frustrating the "statutory or even constitutional limits on review" (*id.* at 579). The Legislature has determined that there should be statutory limits on the ability of the People and of defendants to obtain appellate review of various matters in criminal actions (*id.*; *see Matter of State of New York v King*, 36 NY2d at 63; *see e.g. People v Joseph R.*, 17 NY3d 767 [2011]; *People v Concepcion*, 17 NY3d 192 [2011]).

If Justice Blumenfeld considers and makes a finding with respect to whether the ADAs conducting the interview of Perez violated ethical rules, he would be doing so in determining a motion he is "authorized" to entertain (*Matter of Lungen v Kane*, 88 NY2d at 862, quoting *Matter of Holtzman v Goldman*, 71 NY2d at 569), namely, a motion to suppress a

---

Supreme Court is authorized to entertain applications to discipline attorneys guilty of "professional misconduct" (Judiciary Law § 90 [2]; *see McNamara v State of New York*, 74 AD3d 760 [2010]; *Erdmann v Stevens*, 458 F2d 1205, 1209 [1972], *cert denied* 409 US 889 [1972]). That is not to say, though, that the Appellate Division of the Supreme Court is the only court authorized to consider or make a finding with respect to whether an attorney has engaged in professional misconduct. Indeed, trial-level courts often make such findings (*see e.g. Rivera v Lutheran Med. Ctr.*, 73 AD3d 891 [2010]).

statement on the ground that it was involuntarily made. Under CPL 60.45, a statement is involuntarily made if, among other things, it is obtained "[b]y any person . . . by means of . . . improper conduct . . . which impaired the defendant's physical or mental condition to the extent of undermining his [or her] ability to make a choice whether or not to make a statement" (CPL 60.45 [2] [a]). We construe the petition before us as a request that we prohibit Justice Blumenfeld from considering and making a finding as to part of the definition of "involuntarily made." Thus, if the District Attorney is correct that the ADAs' purported ethical violations have no bearing on whether their conduct was "improper conduct" within the meaning of CPL 60.45, then Justice Blumenfeld may be committing legal error. That legal error, however, would not be the kind of error that implicates "an unlawful use or abuse of the entire action or proceeding as distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding" (*Matter of State of New York v King*, 36 NY2d at 64).

Consequently, prohibition does not lie under these circumstances.

Inasmuch as we conclude that prohibition does not lie, we need not address the second tier of the analysis, namely, whether prohibition should be granted as a discretionary matter. Nonetheless, we find it appropriate to note that the District Attorney is, of course, legitimately concerned with the reputations of his office and the public servants who are his ADAs, and the extent to which any ruling Justice Blumenfeld may eventually make might affect those reputations. The District Attorney has stated several times in this proceeding that an appeal would not be available to the People to challenge any adverse ruling that Justice Blumenfeld might eventually make on Perez's suppression motion. The People's determination as to whether an appeal is available necessarily must be made, ultimately, only after a defendant's suppression motion is decided and the People know what evidence will be available to them (*see* CPL 450.50 [1]; *People v Smedman*, 184 AD2d 600, 604 [1992]).

The District Attorney's remaining contentions either are without merit or have been rendered academic in light of our determination.

Accordingly, the petition is denied and the proceeding is dismissed on the merits.

MASTRO, J.P., DILLON and MILLER, JJ., concur.

Adjudged that the petition is denied and the proceeding is dismissed on the merits, without costs or disbursements.