[957 NYS2d 171]

In the Matter of RICHARD A. BROWN, Petitioner, v JOEL L. BLU-
MENFELD et al., Respondents.

Second Department, December 19, 2012

**APPEARANCES OF COUNSEL**

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Ryan, James C. Quinn, Robert J. Masters* and *Donna Aldea* of counsel), petitioner pro se.

*Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, New York City (*Mark F. Pomerantz* and *Jane B. O'Brien* of counsel), for respondent Joel L. Blumenfeld.

**OPINION OF THE COURT**

Skelos, J.

Elisaul Perez, a defendant in a criminal action being prosecuted by the petitioner, Richard A. Brown, the District Attorney of Queens County (hereinafter the District Attorney), was interviewed, prior to his arraignment, by an assistant district attorney (hereinafter ADA), and gave a videotaped statement. The interview was conducted pursuant to a program instituted by the District Attorney's office, under which arrested individuals are brought before an ADA just before arraignment, read a

series of statements followed by *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]), and questioned (hereinafter the Program). Perez moved to suppress his statement, and the respondent Joel L. Blumenfeld, an Acting Justice of the Supreme Court, Queens County, denied the motion, finding that he could not conclude that Perez's statement was involuntary. Nonetheless, Justice Blumenfeld precluded the People from introducing Perez's statement at trial on the ground that the District Attorney's program violated attorney-ethics rules. In this proceeding pursuant to CPLR article 78 in the nature of prohibition, the District Attorney seeks to have this Court prohibit Justice Blumenfeld from enforcing that order. We hold that, under the circumstances of this case, Justice Blumenfeld exceeded his authorized powers in precluding the People from introducing Perez's statement at trial, such that the remedy of prohibition lies to prevent him from enforcing the order, and that the exercise of this Court's discretion to grant that remedy is warranted.

In 2007, the District Attorney instituted a program pursuant to which ADAs and detective investigators from the District Attorney's office interview arrestees who are detained at the Queens County Central Booking facility, awaiting arraignment on felony charges (*see Matter of Brown v Blumenfeld*, 89 AD3d 94, 97 [2011]). As formal criminal proceedings have not been commenced against these arrestees, who are not represented by counsel and have not requested the assistance of counsel, their indelible rights to counsel have not attached at the time of the interviews (*see People v Grice*, 100 NY2d 318, 320-321 [2003]; *People v Rivers*, 56 NY2d 476, 479 [1982]; *People v Grimaldi*, 52 NY2d 611, 616 [1981]).

Under the Program, arrestees are brought to an interview room where an ADA reads, or permits a detective investigator to read, a preprinted "Interview Form" (hereinafter the Form) (*see Matter of Brown v Blumenfeld*, 89 AD3d at 97). The Form contains a series of statements that precede the reading of *Miranda* warnings. (The remarks preceding the *Miranda* warnings will be referred to herein, consistent with Justice Blumenfeld's terminology, as the preamble.) Once the *Miranda* warnings are read, the arrestees are asked whether they are willing to speak with the ADAs and detective investigators, who then proceed to question the individuals upon receiving affirmative responses.

On March 14, 2009, an interview pursuant to the Program was conducted with Elisaul Perez, who later became a defendant in a criminal proceeding entitled *People v Perez*. The

proceeding stemmed from an incident, occurring on March 13, 2009, in which two men allegedly beat another man (hereinafter the complainant) on a street in Queens. Allegedly, the perpetrators also took the complainant's iPod. Approximately 10 minutes later, at about 12:30 a.m., Perez, who allegedly matched the complainant's description of one of the perpetrators, was stopped by police officers three or four blocks away from the scene of the incident. Perez allegedly had blood on his sneakers. The officers frisked Perez for weapons, and recovered two iPods, one of which had blood on it. When the complainant identified one of the iPods as his, Perez was arrested and later transported to the Queens County Central Booking facility.

At 2:35 p.m., Perez was brought to an interview room, pursuant to the Program's procedures. ADA Angela Garg, ADA Louisa DeRose, Detective Investigator Mary Picone, and a Spanish interpreter were present in the interview room. Pursuant to the Program's protocols, Perez was advised of the charges that would be filed against him when he appeared in court that day, and the date, time, and place of the incident underlying the charges. The preamble was then read to Perez (in Spanish) as follows:

> "In a few moments I'm going to read you your rights. After that, you will be given an opportunity to explain what happened at that date, time and place.
>
> "If you have an alibi, give us as much information as you can, including the names of any people you were with.
>
> "If your version of the events of that day is different from what we have heard, this is your opportunity to tell us your story.
>
> "If there is something you would like us to investigate concerning this incident, you must tell us now so we can look into it.
>
> "Even if you have already spoken to someone else, you do not have to talk to me.
>
> "This will be the only opportunity you will have to talk to me prior to your arraignment on these charges."

Perez was told that the entire interview was being recorded on video, was advised of his right to be arraigned without delay,

and was read *Miranda* warnings. He indicated that he understood each warning, and then agreed to talk to the ADAs and the detective investigator. Perez was then questioned about the incident and gave statements concerning his version of the events.

According to Perez, he and the complainant had both attended Newtown High School, and had both been involved in a romantic relationship with the same female student. Perez maintained that on June 6, 2008, he and the complainant had a physical altercation over the female student, during which the complainant had beaten him so badly that he required treatment at Elmhurst Hospital.

On the day of the subject incident, Perez explained, he happened to see the complainant on the street and they got into an argument. Perez asserted that, during the argument, the complainant picked up, or attempted to pick up, a stone with which to hit Perez, and thus, Perez explained, he punched the complainant in the face two or three times, causing the complainant's nose to bleed. Perez recalled that the complainant then ran away. According to Perez, he noticed that the complainant had dropped his iPod, and he picked it up.

Perez was subsequently charged in an indictment with, among other crimes, two counts of robbery in the second degree. Perez thereafter moved, inter alia, to suppress the videotaped statement he had given during the interview conducted pursuant to the Program. He argued that he had not properly been advised of his *Miranda* rights, that he did not knowingly and intelligently waive those rights, and that the statements were "illegally obtained."

Justice Blumenfeld held a hearing pursuant to *People v Huntley* (15 NY2d 72 [1965]) with respect to Perez's suppression motion. At the hearing, the DVD containing Perez's recorded statement was admitted into evidence and played for Justice Blumenfeld. Justice Blumenfeld also heard testimony from, among others, ADA Garg. During that testimony, Justice Blumenfeld pointed out that, before Perez gave his version of the incident to the ADAs and detective investigators, he had essentially been told, "if there's anything that you want to tell us, you must tell us now and we'll investigate it." Justice Blumenfeld then asked Garg whether there had been "any attempt to verify" Perez's version of the incident. Garg replied that she did not know, as it would be up to the "assigned [ADA]" to do that investigation.

Following the hearing, Justice Blumenfeld informed the People and Perez's counsel that he would be contacting a professor of legal ethics to explore the issue of the propriety of the Program, which Justice Blumenfeld noted had originally been raised by Judicial Hearing Officer Thomas A. Demakos in a different case. Justice Blumenfeld questioned whether any ethical rules were violated during the course of the interview conducted pursuant to the Program, particularly as to the reading of the preamble. Ultimately, Justice Blumenfeld received a report from Professor Ellen Yaroshefsky, in which she opined that "the conduct in the interview" violated certain of the Rules of Professional Conduct (*see* 22 NYCRR 1200.0).

After giving the parties an opportunity to respond to the report, Justice Blumenfeld rendered an oral decision, as well as a written "interim" order dated August 12, 2010. Justice Blumenfeld expressed concern about the ethical implications to the "[District Attorney's] office," of making a promise, during an interview pursuant to the Program, to investigate a defendant's version of an incident, and then failing to do so. In this regard, Justice Blumenfeld indicated that such conduct might violate rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), which prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation" (*see* former Code of Professional Responsibility DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)] [same]). Justice Blumenfeld further determined that, contrary to the People's contention, it was appropriate to address ethical violations in the context of a motion to suppress a statement that was allegedly made involuntarily.

In support of this determination, Justice Blumenfeld cited CPL 60.45. That statute provides that a defendant's statement is "involuntarily made" when that statement "is obtained from" the defendant

> "[b]y any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement" (CPL 60.45 [2] [a]).

Thus, Justice Blumenfeld concluded, a suppression court could consider any "improper conduct," including violations of ethical rules, when determining, pursuant to CPL 60.45 (2), whether a defendant's statement was involuntarily made. Although Justice

Blumenfeld decided certain branches of Perez's omnibus motion which were to suppress certain evidence,[1] he concluded that further proceedings were necessary before he could decide that branch of the motion which was to suppress Perez's videotaped statement.

On September 30, 2010, following the issuance of the interim order, the District Attorney commenced, in this Court, a proceeding pursuant to CPLR article 78 in the nature of prohibition against Justice Blumenfeld (hereinafter *Brown I*) (*see* CPLR 506 [b] [1]). The District Attorney sought to have Justice Blumenfeld prohibited from, among other things, ruling upon whether the ADAs who conducted Perez's interview pursuant to the Program violated attorney-ethics rules (*see Matter of Brown v Blumenfeld*, 89 AD3d at 101).

This Court denied the petition and dismissed the proceeding in *Brown I*, reasoning, in pertinent part, as follows:

> "Although the Court of Appeals has declined to detail the several categories of excesses of jurisdiction and power arising in criminal actions that merit the abrupt intervention of prohibition, that Court has observed that those categories always invoke . . . unlawful use or abuse of the entire action or proceeding, and implicate the legality of the entire proceeding. This situation is to be distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding.
>
> "Furthermore, prohibition is never available merely to correct or prevent a mistake, error in procedure, or error in substantive law, even when such errors may be grievous or egregious . . .
>
> "If Justice Blumenfeld considers and makes a finding with respect to whether the ADAs conducting the interview of Perez violated ethical rules, [Justice Blumenfeld] would be doing so in determining a motion he is authorized to entertain, namely, a motion to suppress a statement on the ground that it was

---

1. Justice Blumenfeld suppressed the physical evidence, i.e., the iPods, concluding that they were obtained as a result of an unlawful search. However, he declined to suppress a statement given by Perez to the police prior to the interview pursuant to the Program, which was substantially similar to the statement he made during that interview.

involuntarily made. Under CPL 60.45, a statement is involuntarily made if, among other things, it is obtained '[b]y any person . . . by means of . . . improper conduct . . . which impaired the defendant's physical or mental condition to the extent of undermining his [or her] ability to make a choice whether or not to make a statement' (CPL 60.45 [2] [a]). We construe the petition before us as a request that we prohibit Justice Blumenfeld from considering and making a finding as to part of the definition of 'involuntarily made.' Thus, if the District Attorney is correct that the ADAs' purported ethical violations have no bearing on whether their conduct was 'improper conduct' within the meaning of CPL 60.45, then Justice Blumenfeld may be committing legal error. That legal error, however, would not be the kind of error that implicates an unlawful use or abuse of the entire action or proceeding as distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding.

"Consequently, prohibition does not lie under these circumstances" (*id.* at 102-104 [internal quotation marks and citations omitted]).

Subsequent to this Court's decision in *Brown I,* Justice Blumenfeld granted the People's application to reopen the suppression hearing in *People v Perez,* in order to permit Paul Schraeter, an ADA who had been assigned to Perez's case, to testify as to what investigation was made of Perez's version of the incident, following the interview conducted pursuant to the Program. At the reopened hearing, Schraeter testified that he contacted the complainant a few days after Perez made his videotaped statement, and, contrary to Perez's statement, the complainant had denied knowing Perez prior to the incident. In addition, according to Schraeter, although Perez maintained that the complainant had dropped his iPod during a physical altercation, the complainant insisted that Perez had forcibly taken the iPod. Schraeter never contacted Newtown High School to find out whether the complainant and Perez had both attended that school, as Perez claimed, and Schraeter could only say that he may have contacted Elmhurst Hospital to find out whether Perez had ever been treated there for injuries allegedly sustained after being beaten by the complainant on a prior occasion.

After the reopened hearing was concluded, Justice Blumenfeld issued an order dated April 17, 2012, addressing that branch of Perez's omnibus motion which was to suppress his videotaped statement (37 Misc 3d 272 [2012]). Justice Blumenfeld observed that, before being read his *Miranda* warnings and giving his statement, Perez was told, pursuant to the preamble: "If there is something you would like us to investigate concerning this incident, you must tell us now so that we can look into it" (37 Misc 3d at 276). Justice Blumenfeld viewed that statement as a promise made to Perez that if he did not invoke his rights to remain silent and to counsel, and made a statement concerning the incident, the District Attorney's office would investigate his version of the incident. Justice Blumenfeld found that the District Attorney's office failed to fulfill that promise to investigate Perez's statement.

Justice Blumenfeld then concluded that the preamble was "misleading and deceptive [and thus] violative of rule 8.4 (c) [of the Rules of Professional Conduct]" (*id.* at 290). In that respect, Justice Blumenfeld reasoned that the preamble contained a false promise to investigate, which was designed to induce the defendant to speak to the ADAs, that it "create[d] an impression" that the interview "exist[ed] to assist the defendant," that it failed to inform the defendant that he would have an opportunity to have his story investigated after the assignment of counsel, and that it created a "false sense of urgency" to immediately relate his version of events (*id.* at 288).

Nonetheless, Justice Blumenfeld reasoned, he could not conclude that the "improper conduct"—i.e., the promise to investigate and the failure to do so—*"impaired* the defendant's mental condition to the extent of undermining his ability to make a choice whether or not to make a statement" (*id.* at 291), as is required for a finding of involuntariness under CPL 60.45 (2) (a). Significantly, Justice Blumenfeld indicated, he could not determine that Perez "made the statements . . . because he felt he 'must' in order to give his side of the story or [that] he even understood anything in the preamble" (*id.*). For that reason, "the motion to suppress pursuant to CPL 60.45 [was] denied" (*id.* at 292).

Justice Blumenfeld concluded, however, that since "the failure to keep the promises made to this defendant in the preamble clearly violated rule 8.4 (c), [he] must fashion an appropriate sanction" (*id.*). Justice Blumenfeld rejected the proposed sanction of a dismissal in furtherance of justice pursuant to

CPL 210.20, concluding that this remedy was "draconian" and unwarranted since Perez admitted to assaulting the complainant. Justice Blumenfeld also declined to make a report to the Grievance Committee, since it was unclear who would properly be subject to such discipline.

Justice Blumenfeld observed that, pursuant to Judiciary Law § 2-b (3), "[a] court of record has power . . . to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it" (*id*. at 293). Reasoning that courts have an obligation to report attorneys who commit ethical breaches or to fashion alternative sanctions, and that judges can "take appropriate steps to regulate the conduct of lawyers appearing before them, short of formal discipline" (*id*.), Justice Blumenfeld decided to invoke Judiciary Law § 2-b (3) to preclude the People from using Perez's videotaped statement at trial. Justice Blumenfeld indicated that excluding the videotaped statement would assure that the People were "not able to benefit from their improper conduct," as was "the purpose of a judicial sanction" (*id*.)

The District Attorney subsequently commenced the subject proceeding pursuant to CPLR article 78, in the nature of prohibition, inter alia, to prohibit Justice Blumenfeld from enforcing the preclusion order.

The writ of prohibition, originally a common-law remedy, is codified in CPLR article 78, which authorizes a proceeding to determine whether a court, among others, "proceeded, is proceeding or is about to proceed without or in excess of jurisdiction" (CPLR 7803 [2]; *see Matter of Rush v Mordue*, 68 NY2d 348, 352 [1986]). Due to its "extraordinary" nature, however, prohibition lies "only where there is a clear legal right" to such relief, and "only when a court (if a court is involved) acts or threatens to act without jurisdiction in a matter . . . over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction" (*Matter of State of New York v King*, 36 NY2d 59, 62 [1975]; *see Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358 [2008]; *Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d 783, 786 [1993]; *Matter of Rush v Mordue*, 68 NY2d at 352; *Matter of Dondi v Jones*, 40 NY2d 8, 13 [1976]). In essence, prohibition is available only in "those rare circumstances where an arrogation of power would justify burdening the judicial process with collateral intervention and summary correction" (*Matter of*

*Rush v Mordue*, 68 NY2d at 354). Even in those "rare circumstances," however, the writ "does not issue as of right, but only in the sound discretion of the court" (*id.*; *see Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d at 786; *Matter of Dondi v Jones*, 40 NY2d at 13).

Thus, in adjudicating a petition seeking a writ of prohibition, this Court must engage in a two-tiered analysis (*see Matter of Holtzman v Goldman*, 71 NY2d 564, 568 [1988]). The first question is whether the issue presented is the type for which the remedy of prohibition lies (*see id.*; *Matter of Brown v Blumenfeld*, 89 AD3d at 102; *Matter of Vinluan v Doyle*, 60 AD3d 237, 243 [2009]). If prohibition lies, then this Court must consider whether to exercise its discretion to grant that remedy (*see Matter of Pirro v Angiolillo*, 89 NY2d 351, 359 [1996]; *Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d at 786; *Matter of Morgenthau v Erlbaum*, 59 NY2d 143, 147 [1983], *cert denied* 464 US 993 [1983]).

Turning to the question of whether prohibition lies, while one of the functions of a writ of prohibition is to prohibit a lower court from making an unwarranted assumption of subject matter jurisdiction (*see Matter of Pirro v Angiolillo*, 89 NY2d at 355; *Matter of Proskin v County Ct. of Albany County*, 30 NY2d 15, 18 [1972]), there is no question here that Justice Blumenfeld, as a Supreme Court Justice, had subject matter jurisdiction to entertain the subject criminal proceeding (*see Matter of Jacobs v Altman*, 69 NY2d 733, 735 [1987]; *see also* NY Const, art VI, § 7; Judiciary Law § 140-b).

The other function of a writ of prohibition is to restrain a lower court from exceeding its authorized powers in a proceeding over which it has subject matter jurisdiction (*see Matter of Pirro v Angiolillo*, 89 NY2d at 355; *Matter of Proskin v County Ct. of Albany County*, 30 NY2d at 18). In determining whether a writ should issue for this purpose, "it is crucial to distinguish between an error in procedure or substantive law during a litigation and the arrogation of power which is subject to correction by prohibition" (*La Rocca v Lane*, 37 NY2d 575, 580 [1975], *cert denied* 424 US 968 [1976]). "The writ does not lie as a means of seeking a collateral review of an error of law, no matter how egregious that error might be . . . but only where the very jurisdiction and power of the court are in issue" (*Matter of Steingut v Gold*, 42 NY2d 311, 315 [1977]; *see Matter of Rush v Mordue*, 68 NY2d at 353; *Matter of Brown v Blumenfeld*, 89 AD3d at 103). As the Court of Appeals has recognized,

> "there is no sharp line between a court acting in error under substantive or procedural law and a court acting in excess of its powers, if only because every act without jurisdiction or in excess of its powers in a proceeding over which it has jurisdiction of necessity involves an 'error of law' " (*La Rocca v Lane*, 37 NY2d at 580; *see Matter of Rush v Mordue*, 68 NY2d at 353).

In drawing the difficult distinction between legal errors and actions taken in excess of power, however, the Court of Appeals has instructed that such excesses of power involve "an unlawful use or abuse of the entire action or proceeding as distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding" (*Matter of State of New York v King*, 36 NY2d at 64; *see Matter of Holtzman v Goldman*, 71 NY2d at 569).

Here, the District Attorney contends that, even if Justice Blumenfeld correctly concluded that the conduct of the interview pursuant to the Program constituted a violation of rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), he exceeded his authorized power by precluding Perez's videotaped statement *on that basis*. Under the circumstances of this case, the District Attorney is correct.[2]

Initially, there is no specific statutory authority under which a court is permitted to exclude evidence obtained in violation of attorney-ethics rules. Under Criminal Procedure Law article 710, which is designed to assure that defendants in criminal proceedings have "fair pretrial procedures to address alleged constitutional violations" (*People v Mendoza*, 82 NY2d 415, 425 [1993]), an aggrieved defendant may move to suppress evidence obtained by enumerated unlawful grounds (*see* CPL 710.20).

---

2. While the District Attorney takes issue with Justice Blumenfeld's determination that the conduct of the interview pursuant to the Program constituted a violation of rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), the District Attorney does not, nor could he properly, seek a writ of prohibition on that basis. The determination by Justice Blumenfeld that rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0) was violated because a misrepresentation was made to Perez during the course of the interview would, if incorrect, merely represent a legal error for which the extraordinary remedy of prohibition is not available (*cf. Matter of Brown v Blumenfeld,* 89 AD3d at 103-104; *Matter of Cuomo v Hayes,* 54 AD3d 855, 858 [contention that the court was "acting ultra vires as a result of its legal interpretation of a statute" did not justify invocation of writ of prohibition]). Thus, no review is made of Justice Blumenfeld's conclusion that rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0) was violated or that misrepresentations were made to Perez during the course of the interview.

The statute expressly permits suppression of statements which were involuntarily made within the meaning of CPL 60.45, but does not address exclusion of statements obtained in violation of ethical rules. In *Brown I,* this Court refused to prohibit Justice Blumenfeld from making a finding as to whether the conduct of the interview violated ethical rules, in order to ultimately determine whether any such violation constituted "improper conduct" of the kind that would render Perez's statement involuntary under CPL 60.45 (*see Matter of Brown v Blumenfeld*, 89 AD3d at 103-104). This Court reasoned that, in making such a finding, Justice Blumenfeld would "be doing so in determining a motion he is 'authorized' to entertain," i.e., a motion to suppress a statement pursuant to CPL 710.20 (3), and would merely be committing a legal error if, in fact, ethical violations could not qualify as "improper conduct" under CPL 60.45 (*id.* at 103).

Justice Blumenfeld, upon finding that the conduct of the interview violated rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), did consider whether that violation rendered Perez's statement involuntary under CPL 60.45. Significantly, Justice Blumenfeld concluded that the evidence did not demonstrate that Perez's statement was involuntarily made, and, thus, that suppression pursuant to CPL 710.20 (3) was unwarranted. Moreover, the portion of the preamble that Justice Blumenfeld found to be a misrepresentation in violation of rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0) advised Perez that he "must" tell the interviewer about anything he would like investigated. Nonetheless, Justice Blumenfeld found, the evidence did not demonstrate that the defendant made the challenged statements "because he felt he 'must' in order to give his side of the story" (37 Misc 3d at 291). In other words, according to Justice Blumenfeld's findings, there was no nexus between the alleged misrepresentation and Perez's statement. Indeed, Justice Blumenfeld concluded that the evidence did not even demonstrate that Perez "understood anything in the preamble" (*id.*). Accordingly, Justice Blumenfeld effectively determined that the evidence did not show that Perez's videotaped statement was a product of the perceived ethical violation.

Put differently, Justice Blumenfeld did not conclude that there was any violation of Perez's constitutional or statutory rights, or of *Miranda,* or even that the challenged statement was demonstrably obtained as a result of the alleged unethical con-

duct.[3] Justice Blumenfeld, therefore, did not preclude the statement to remedy any demonstrable prejudice to Perez in the criminal proceeding that was before him, or, in general, to carry out the court's responsibility in adjudicating that case. Under such circumstances, Justice Blumenfeld exceeded his power by imposing a generalized sanction upon the People, precluding them from presenting the statement as evidence in the criminal proceeding.

The only authority Justice Blumenfeld cites as providing him with the power to preclude the videotaped statement as a general sanction is Judiciary Law § 2-b (3), and the courts' authority "to regulate the conduct of attorneys appearing before [the court]" (37 Misc 3d at 293), both under its inherent power and pursuant to Judiciary Law § 90 (2). Judiciary Law § 2-b (3) only authorizes a court "to devise and make new process and forms of proceedings, necessary to carry into effect *the powers and jurisdiction possessed by it*" (emphasis added). By its terms, this statute only gives Justice Blumenfeld the power to devise new process to carry out powers that he already possesses (*see People v Wrotten*, 14 NY3d 33, 37 [2009], *cert denied* 562 US —, 131 S Ct 1020 ["By enacting Judiciary Law § 2 b (3), the Legislature has explicitly authorized the courts' use of innovative procedures where 'necessary to carry into effect the powers and jurisdiction possessed by (the court)' "]). Thus, this statute alone does not answer the question of whether Justice Blumenfeld has the power to impose a general sanction on the People, not necessary to the adjudication of the criminal proceeding, for violation of an ethical rule (*cf. People v Wrotten*, 14 NY3d at 36 [trial court properly invoked Judiciary Law § 2-b in allowing an adult complainant, too ill to appear in court, to testify via real-time, two-way video where it found such testimony necessary to permit the prosecution to proceed]; *People v Ricardo B.*, 73 NY2d 228, 232-233 [1989] [Judiciary Law § 2-b properly invoked to empanel two juries, in order to allow for a joint trial of

---

**3.** The issue of whether there was a violation of any of Perez's constitutional or statutory rights, or of *Miranda,* is not before us, and no conclusions are made in this regard. Further, in observing that Justice Blumenfeld did not find the challenged statement to be a product of the perceived ethical violation, it is noted that the considerations before us in this case, involving remedies for an alleged ethical violation, are distinct from those that may arise from a claim of a constitutional or statutory violation, or a violation of *Miranda*. It is acknowledged, for example, that where *Miranda* warnings are not given, a statement must be suppressed without making an assessment of the individual circumstances of a particular defendant (*see Miranda v Arizona,* 384 US at 468-469).

codefendants against whom the People's evidence was the same]).

Judiciary Law § 90 is entitled "Admission to and removal from practice by appellate division; character committees." As its title suggests, this lengthy statute lays out the various requirements and procedures for attorney admissions to the bar and concerning attorney discipline. Subdivision (2) of that statute, which is relied upon by Justice Blumenfeld, provides:

> "The supreme court shall have power and control over attorneys and counsellors-at-law and all persons practicing or assuming to practice law, and the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice; and the appellate division of the supreme court is hereby authorized to revoke such admission for any misrepresentation or suppression of any information in connection with the application for admission to practice" (Judiciary Law § 90 [2]).

More specifically, Justice Blumenfeld relies upon the first clause of the first sentence—"[t]he supreme court shall have power and control over attorneys and counsellors-at-law"—to contend that he has the power to preclude evidence for an ethical violation, not as a remedy for any prejudicial effect the violation had in the case before him, but as a sanction, merely because unethical conduct was committed. The courts do, of course, have the power to regulate the legal profession in general. The clause of Judiciary Law § 90 (2) invoked by Justice Blumenfeld, which has its origin in the first Constitution of this State, generally confirms what would otherwise have been implied—that attorneys are appointed by the courts, and are to be "regulated by the rules and orders of the said courts" (*People ex rel. Karlin v Culkin*, 248 NY 465, 471-472, 477 [1928] [internal quotation marks omitted]; *see also Gair v Peck*, 6 NY2d 97, 110-111 [1959], *cert denied* 361 US 374 [1960]). That power, however, is principally vested in the Appellate Divisions, which have the exclusive authority to conduct attorney disciplinary proceedings (*see* Judiciary Law § 90 [2]; *Gair v Peck*, 6 NY2d at 102, 110 [invoking Judiciary Law § 90 (2) as support for conclu-

sion that the Appellate Division, First Department, had the power to adopt a rule relating to contingent fee arrangements in certain actions]; *People ex rel. Karlin v Culkin*, 248 NY at 468, 470 [citing Judiciary Law § 90 (2) (former § 88 [2]) as support for its holding that the Appellate Division had the power to direct a general inquiry into the conduct of attorneys, particularly with respect to the practice of " '(a)mbulance chasing,' " and in the course of that inquiry to compel an attorney to testify "as to his acts in his professional relations"]; *Matter of Brown v Blumenfeld*, 89 AD3d at 102 n 5; *McNamara v State of New York*, 74 AD3d 760 [2010]).[4]

Moreover, the purpose of the sanction here was not to regulate the conduct of the attorneys appearing before Justice Blumenfeld (*cf. Rivera v Lutheran Med. Ctr.*, 73 AD3d 891 [2010]). Rather, it was addressed to the administration of the Program by the District Attorney's office, in general. In rejecting the People's suggestion that an appropriate remedy for the perceived ethical violation would be formal discipline, Justice Blumenfeld indicated that the ethical breach was not "fairly attributable" to the prosecutors who appeared before him or to the prosecu-

---

**4.** Justice Blumenfeld argues in his brief that "[b]ecause courts have the inherent authority to sua sponte dismiss litigation . . . it follows that judges also have the authority to impose the lesser sanction of excluding evidence to address attorney misconduct." Even assuming such a conclusion would follow from that premise, in arguing that "courts have the inherent authority to sua sponte dismiss litigation," Justice Blumenfeld relies upon the First Department's decision in a civil case, *Wehringer v Brannigan* (232 AD2d 206, 207 [1996]). Whether or not the courts have such inherent authority in a civil case, the court, in a criminal case, does not have inherent authority to dismiss an indictment (*see Matter of Morgenthau v Roberts*, 65 NY2d 749, 751-752 [1985]; *People v Douglass*, 60 NY2d 194, 205 [1983]). Rather, the court has the authority to dismiss an indictment only by virtue of statute (i.e. CPL 210.20), and only to the extent authorized by that statute (*see Matter of Morgenthau*, 65 NY2d at 751-752; *People v Douglass*, 60 NY2d at 205). (Justice Blumenfeld expressly declined to dismiss the indictment in *People v Perez* pursuant to CPL 210.20.)

Similarly, although trial courts have the authority to preclude evidence as a sanction for discovery abuses, or to impose monetary sanctions for frivolous conduct, such sanctions are expressly permitted by statute (*see* CPLR 3126 [authorizing a court to make such orders "as are just" with regard to the failure to obey a discovery order or the willful failure to disclose relevant information]; CPL 240.70 [1] [authorizing courts to preclude evidence, or "take any other appropriate action" for the failure to comply with the provisions of article 240, pertaining to discovery]) or court rule (*see* 22 NYCRR 130-1.1 [authorizing imposition of costs and attorneys fees for engaging in "frivolous conduct"]). Indeed, an attorney can properly be subject to monetary sanctions "only if there is legislation or a court rule authorizing the sanction" (*Matter of Premo v Breslin*, 89 NY2d 995, 997 [1997]).

tors involved in interviewing Perez, but was the product of an "office-wide failure." Justice Blumenfeld further indicated during the hearings held in connection with Perez's suppression motion that he would "like to see [the Program as] a work in progress" and to see that it is "done right." In that respect, Justice Blumenfeld expressed the following opinion concerning the Program:

> "I think you [i.e., the District Attorney, and the ADAs charged with administering the program] are opening up a can of worms. *It may not be in this case,* but I think you are opening up a can of worms. I think you would be better off with the *Miranda* warnings" (emphasis added).

Thus, the sanction imposed by Justice Blumenfeld was not meant to *regulate the conduct of the attorneys appearing before him* in connection with *People v Perez,* but, rather, to *regulate the administration of a program* adopted by the District Attorney's office. In this manner, Justice Blumenfeld exceeded his jurisdiction to adjudicate *People v Perez* and to regulate the conduct of the attorneys in connection with the adjudication of that case (*cf. State of New York v Philip Morris Inc.,* 308 AD2d 57, 68 [2003] [a court's "control over attorneys *appearing before it*" and power to "regulate *the conduct of attorneys in his courtroom*" did not give judge the power to regulate the conduct of attorneys who had not previously appeared before him, or control conduct that did not occur in his courtroom (internal quotation marks omitted)]).

For this reason, the present case is distinguishable from *United States v Hammad* (858 F2d 834 [2d Cir 1988], *cert denied* 498 US 871 [1990]), upon which Justice Blumenfeld relies, and which, in any event, is not binding on this Court. In that case, the defendant had moved to suppress audio and video recordings of statements he made, after having retained counsel, to an individual cooperating with the prosecution. The defendant asserted that the prosecutor had, through the "alter ego" of the cooperating witness, communicated with him directly after learning that he had retained counsel, and, thereby, "violated DR 7-104 (A) (1) of the American Bar Association's Code of Professional Responsibility" (*id.* at 836). That Rule "prohibit[ed] a lawyer from communicating with a 'party' he [knew] to be represented by counsel regarding the subject matter of that representation" (*id.* at 836). While the United States Court of Appeals for the Second Circuit ultimately concluded that suppression was not appropriate because the law had previously

been unsettled in this area, it held that suppression may be ordered to remedy violation of a disciplinary rule. In so holding, the court reasoned that " 'civilized conduct of criminal trials' demands federal courts be imbued with sufficient discretion to ensure fair proceedings" (*id.* at 840-841, quoting *Nardone v United States*, 308 US 338, 342 [1939]).

Here, Justice Blumenfeld opined that "the purpose of a judicial sanction" was to assure that "the People are not able to benefit from their improper conduct" (37 Misc 3d at 293). However, this observation was directly at odds with Justice Blumenfeld's conclusion that the evidence did not show that Perez's videotaped statement was a product of that conduct. In other words, Justice Blumenfeld effectively concluded that there was no evidence that the People did, in fact, benefit from any improper conduct. In light of that conclusion, the preclusion order was not remedial, and was not issued to further the adjudication of the underlying criminal proceeding. Relatedly, the Second Circuit's holding was made in the context of a case, unlike *People v Perez*, in which the challenged evidence was unquestionably a product of the violation of a disciplinary rule, and may properly be interpreted as limited to such a factual circumstance (*People v Anderson*, 66 NY2d 529, 535-536 [1985] ["it is well settled that '(t)he language of any opinion must be confined to the facts before the court' " (quoting *Dougherty v Equitable Life Assur. Socy.*, 266 NY 71, 88 [1934])]).

Justice Blumenfeld's reliance upon the New York Court of Appeals' decisions in *People v Skinner* (52 NY2d 24 [1980]) and *People v Hobson* (39 NY2d 479 [1976]) is similarly unavailing. The issue in those cases was whether defendants, known to be represented by a lawyer in connection with criminal charges under investigation, could validly waive their right to counsel and be interrogated, in the absence of their attorney, either in a custodial (*see People v Hobson*, 39 NY2d at 481) or in a noncustodial (*see People v Skinner*, 52 NY2d at 26) setting. The Court in both cases, answering in the negative and suppressing the evidence unlawfully obtained, indicated that its determination was based upon the privilege against self-incrimination, the right to counsel, and the right to due process, all guaranteed by the State Constitution (*see id.* at 28; *People v Hobson*, 39 NY2d 479 [1976]; *see also* NY Const, art I, § 6). The Court also noted in those cases that the attempt to secure a waiver of a represented defendant's right to counsel violated the ethical rule barring communication with a person known to be represented by counsel as to the subject of the representation (*see People v*

*Skinner*, 52 NY2d at 29-30; *People v Hobson*, 39 NY2d at 484). While this breach of professional ethics was cited in support of the Court's decision to suppress evidence in those cases, the Court excluded the evidence in *Skinner* and *Hobson* not only because it was obtained in violation of ethical rules, but because it was obtained in violation of the defendants' constitutional rights. Thus, *Skinner* and *Hobson* do not stand for the proposition that violation of an ethical rule, by itself, is sufficient to warrant preclusion of evidence. Here, as noted above, Justice Blumenfeld did not conclude that Perez's statement was obtained in violation of his constitutional rights (and we make no determination in that regard), but only in violation of ethical rules. In any event, *People v Perez* is distinguishable from *Skinner* and *Hobson* because the challenged evidence in those latter cases was a product of the violation of the ethical rule against communicating with a represented defendant on the subject of the representation, whereas here, Justice Blumenfeld did not find that the videotaped statement was a product of the alleged ethical violation.

Under these circumstances, it cannot be said that Justice Blumenfeld's imposition of a sanction in the form of preclusion of the videotaped statement constituted an "unlawful procedure or error in the action or proceeding *itself related to the proper purpose of the action or proceeding*" (*Matter of State of New York v King*, 36 NY2d at 64 [emphasis added]). The proper purpose of the criminal proceeding is to determine whether the prosecution can prove that Perez is guilty of the crimes charged, and if so, to punish him (*see People v Roselle*, 84 NY2d 350, 355 [1994]). Further, the proper purpose of a pretrial suppression hearing is primarily to address alleged constitutional and statutory violations and to ensure a fair trial (*see* CPL 710.20; *People v Mendoza*, 82 NY2d at 425). Here, the criminal proceeding, and more specifically, the suppression hearing, were used to impose a generalized sanction on the District Attorney's office for its administration of a program. As such, Justice Blumenfeld's preclusion order constituted a misuse of the entire proceeding (*see Matter of State of New York v King*, 36 NY2d at 64 [confirming that prohibition is appropriate where criminal action is "used as a pretext"]).

It also cannot be said that, because the court has the power to suppress evidence in a criminal case or to decide a defendant's motion to suppress evidence, Justice Blumenfeld was acting within his authority, and merely made a legal error in deciding

to preclude the videotaped statement. Similar assertions were made and rejected in *Matter of Holtzman v Goldman* (71 NY2d 564 [1988]), in which the People sought to prohibit the trial court from enforcing a trial order of dismissal, entered on the merits, even though no evidence had been presented and the merits had not yet been heard (*id.* at 566). In granting the petition, the Court concluded: "it is no answer to assert that because the court can dismiss an indictment in some circumstances its improper exercise of that power in others was merely trial error" (*id.* at 570). Rather, "[t]he court 'has the power to do for some purposes what it lacks power to do for others' " (*id.*, quoting *Matter of Proskin v County Ct. of Albany County*, 30 NY2d at 20 [the fact that the trial court had the power to grant limited inspection of grand jury minutes for the purpose of determining the sufficiency of the indictment did not render it mere trial error to permit the defendant unlimited inspection of the minutes to assist in the preparation of his case]). Here, Justice Blumenfeld lacked the power to preclude Perez's statement, since the sanction of preclusion was not imposed to remedy any prejudice to Perez or any violation of Perez's rights, but for the purpose of sanctioning perceived unethical conduct, in general.[5]

Accordingly, as Justice Blumenfeld's order precluding the videotaped statement as a sanction for unethical conduct committed by the District Attorney's office in administering the Program in general was not mere legal error, but, rather, an improper arrogation of power, the remedy of prohibition lies (*see Matter of Premo v Breslin*, 89 NY2d at 997; *Matter of Holtzman v Goldman*, 71 NY2d at 570; *Matter of Phillips v Ramsey*, 42 AD3d 456, 458 [2007]).

We further conclude that it is appropriate in this case to exercise our discretion to issue a writ of prohibition, preventing

---

**5.** Justice Blumenfeld's act of sanctioning the People for unethical conduct, after *denying* Perez's motion to suppress evidence pursuant to CPL 710.20 and 60.45, distinguishes the present petition from that of *Brown I*. This Court, in *Brown I*, contemplated only that Justice Blumenfeld would consider whether the videotaped statement should be suppressed under those statutes as a product of "improper conduct" which rendered the statement involuntary within the meaning of CPL 60.45. This Court held that Justice Blumenfeld's determination as to whether the conduct of the interview so constituted "improper conduct" would, if erroneous, be mere legal error since Justice Blumenfeld had the power to suppress the statement if found to be involuntary under CPL 60.45. Here, we are faced with a wholly different circumstance in which, having found that the statement was voluntary, Justice Blumenfeld nonetheless precluded its use due to a perceived general ethical violation on the part of the District Attorney's office as a whole.

Justice Blumenfeld from enforcing the preclusion order. In so exercising its jurisdiction, this Court must consider, inter alia, if the harm that would result from the act to be prohibited can be adequately corrected through an appeal or other proceedings at law or in equity (*see Matter of Pirro v Angiolillo*, 89 NY2d at 359; *Matter of Rush v Mordue*, 68 NY2d at 354). A court should be "most reluctant" to grant a writ of prohibition if doing so will "interfere[ ] with normal trial and appellate procedures by permitting collateral review of matters which could be cured upon direct appeal" (*Matter of Holtzman v Goldman*, 71 NY2d at 569; *see Matter of Morgenthau v Erlbaum*, 59 NY2d at 147). After all, "if there is an adequate 'ordinary' remedy, then there is no need to invoke an extraordinary" one (*Matter of Morgenthau v Erlbaum*, 59 NY2d at 147).

Under the present circumstances, however, the People would be unable, in *People v Perez*, to seek appellate review of Justice Blumenfeld's determination to preclude Perez's videotaped statement as a sanction for a perceived violation of an ethical rule. "No appeal lies from a determination made in a criminal proceeding unless specifically provided for by statute" (*People v Hernandez*, 98 NY2d 8, 10 [2002]; *see People v Dunn*, 4 NY3d 495, 497 [2005]). CPL 450.20 sets forth the orders which are subject to appeal by the People in such an action. Although CPL 450.20 (8) permits the People, under certain circumstances, to appeal from an order suppressing evidence pursuant to CPL 710.20 (*see* CPL 450.20 [8]; *People v Ayala*, 89 NY2d 874, 875-876 [1996]), Justice Blumenfeld denied Perez's motion to suppress his videotaped statement pursuant to that statute. As such, the People could not appeal the preclusion order under CPL 450.20 (8), and no other provision of that statute permits appeal of the subject order. While the nonappealability of an order is not dispositive, it is an "important" consideration (*La Rocca v Lane*, 37 NY2d at 579). Under the circumstances of this case, where the legislature, in fashioning CPL 450.20, likely did not contemplate the unusual approach invoked by Justice Blumenfeld here, the nonappealability of the preclusion order weighs heavily in favor of invoking the remedy of prohibition.

Accordingly, in light of our determination that prohibition lies, and that the exercise of this Court's discretion to issue the writ is warranted, the petition is granted, and the respondent Joel L. Blumenfeld, an Acting Justice of the Supreme Court, Queens County, is prohibited from enforcing an order dated April 17, 2012, precluding a videotaped statement given by the

respondent Elisaul Perez from being admitted into evidence at the trial in an action entitled *People v Perez,* pending in the Supreme Court, Queens County, under indictment No. 1202/09.

MASTRO, J.P., FLORIO and HALL, JJ., concur.

Adjudged that the petition is granted, without costs or disbursements, and the respondent Joel L. Blumenfeld, an Acting Justice of the Supreme Court, Queens County, is prohibited from enforcing an order dated April 17, 2012, precluding a videotaped statement given by the respondent Elisaul Perez from being admitted into evidence at the trial in an action entitled *People v Perez,* pending in the Supreme Court, Queens County, under indictment No. 1202/09.